IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DISTRICT

| | |
|---|---|
| **James Ferguson, et al.,** | * |
| | * |
| Plaintiff, | * |
| | *   CV-10-00281-KD-N |
| v. | * |
| | * |
| **BP, PLC, et al.,** | * |
| | * |
| Defendants. | * |
| | * |

### BRIEF OF DEFENDANT CAMERON INTERNATIONAL CORPORATION IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Cameron International Corporation ("Cameron") respectfully submits this brief in support of its motion to dismiss the Class Action Complaint in this case (hereinafter referenced as "Complaint" and cited as "Compl.") for failure to state a claim upon which relief can be granted against Cameron. See Compl. [Doc. 1.]

### SUMMARY OF ARGUMENT

The lost revenue damage claims asserted in the Complaint are specifically addressed by the liability and claims payment provisions of the Oil Pollution Act of 1990 (hereinafter "OPA"), 33 U.S.C. § 2701 et seq. Under OPA, the named Plaintiffs were required to present their damage claims to one or more "responsible" parties as designated under OPA. "Notwithstanding any other provision or rule of law," OPA makes any such responsible party liable to pay claims for the damages sought in the Complaint, and provides for recovery against the Oil Spill Liability Trust Fund for any claim or portion of a claim not paid by a responsible party. These comprehensive and exclusive statutory remedies preclude Plaintiffs' claims against Cameron

because it is not a designated responsible party. For this reason, the claims against Cameron in the Complaint should be dismissed without prejudice.

In addition, the conclusory allegations in the Complaint do not satisfy the *Twombley/Iqbal* standards for pleadings under the Federal Rules of Civil Procedure as definitively interpreted by the Supreme Court. The Complaint's allegations are not adequate to survive dismissal because they contain only labels and conclusions and naked assertions that are devoid of factual enhancement. Indeed, the facts affirmatively alleged in the Complaint make the claims against Cameron highly implausible and therefore insufficient under the Federal Rules.

## KEY ALLEGATIONS IN THE COMPLAINT

For purposes of Cameron's motion, the following are the critical allegations in the Complaint.

The Complaint alleges an explosion and oil spill from the Deepwater Horizon mobile drilling rig on the Outer Continental Shelf in the Gulf of Mexico, beginning on April 20, 2010. (Compl. ¶¶ 2, 33-34.) The Complaint asserts that the Outer Continental Shelf Lands Act "extends exclusive federal jurisdiction to the outer continental shelf." (Compl. ¶ 28.) *See* 43 U.S.C. § 1333(a)(1).

The Complaint alleges that the named Plaintiffs own property on the Alabama shore. (Compl. ¶ 1.) The Complaint alleges that plaintiffs suffered damages in the form of lost value and earning capacity from their property. (Compl. ¶¶ 71-73.) Notably, the Complaint makes no specific allegation of physical intrusion onto the property of the Plaintiffs.

2

The Complaint alleges that the Transocean Defendants owned the Deepwater Horizon. (Compl. ¶ 22.) The Complaint further alleges that BP was operating the drilling unit at the time of the casualty. (Compl. ¶¶ 14, 22.) The Complaint further alleges the BP Defendants were permitted by a lease from MMS to drill for oil on the outer Continental Shelf. (Compl. ¶ 14.) The Complaint alleges that "[a]t all times material hereto, the Deepwater Horizon was owned, manned, possessed, managed, controlled, chartered and/or operated by Transocean and/or BP." (Compl. ¶ 23.) The Complaint alleges a "complex cascade of deep-sea equipment failures and procedural problems" during operations by BP and others on the rig. (Compl. ¶ 35-43.)

The Complaint alleges that "Cameron manufactured and/or supplied the Deepwater Horizon's blow-out preventer valve ('BOP') that failed to activate at the time of the explosion" at the rig. (Compl. ¶ 25). Otherwise, the Complaint alleges no act by Cameron, and in particular, no participation by Cameron in the operation of the drilling unit or the drilling activity.

The Complaint does allege five possible reasons why the BOP failed to activate: "after-market modifications to it *may* have reduced the number of shears that could close the well; a hydraulic leak *may* have disabled it; the shear rams *may* not have been powerful enough to cut through the riser pipe, or *may* have hit a section of pipe that was too thick to cut; and the battery power to one or more of its activator switches *may* have died." (Compl. ¶ 47.) The Complaint affirmatively alleges "that the BOP had been modified and the schematic diagrams for the device were not accurate." (Compl. ¶ 46.) In addition, the Complaint affirmatively alleges that "Defendants could have installed a back up trigger to activate the BOP in the event of the main trigger failing to activate it," and that even though such a "backup trigger is a common drilling-

3

rig requirement" in other areas where BP operates, the Deepwater Horizon was not equipped with this backup remote BOP trigger." (Compl. ¶ 56.) The Complaint further alleges that the Deepwater Horizon was not equipped with a backup BOP. (Compl. ¶ 57.)

Plaintiffs assert a cause of action for trespass, but base that cause of action on conclusory allegations of negligence and allege no deliberate intrusion onto their property by Cameron. (Compl. ¶¶ 88-95.) They assert a cause of action for nuisance based on conclusory allegations about the conduct of all "Defendants," but allege no deliberate involvement by Cameron in the creation of any such nuisance. (Compl. ¶¶ 96-100.) Plaintiffs assert causes of action for negligence and wantonness. (Compl. ¶¶ 101-22; *see* Compl. ¶ 63.) The negligent acts generally alleged, however, include no reference to the manufacture of the Cameron BOP. (Compl. ¶ 107.) Likewise, the Complaint's conclusory allegation of negligence per se refers (without specification) to laws or regulations governing the "manufacture" of "oil rigs such as the Deepwater Horizon," not laws or regulations applicable to manufacture of the Cameron BOP.

In their sixth cause of action, purporting to invoke OCSLA as a basis for applying Alabama law, Plaintiffs assert a product liability cause of action against Cameron. (Compl. ¶¶ 24, 123-30.) Despite detailed factual allegations attributing the alleged failure of the BOP to activate to a variety of external causes, Plaintiffs allege that the BOP was defective "because it failed to operate as intended." (Compl. ¶ 124.) With no factual explanation, Plaintiffs allege a manufacturing defect. (Compl. ¶¶ 126.) Contrary to their affirmative allegations that the BOP was modified and suffered from operational difficulties just before the failure, events well after Cameron's sale of the equipment, Plaintiffs assert that the BOP was in a "defective condition and unreasonably dangerous" when it "left Cameron's control." (Compl. ¶ 128.) Despite their

4

affirmative allegations that the modifications caused the BOP to operate contrary to design, Plaintiffs allege that at "all times, the BOP was used in the manner intended." (Compl. ¶ 129.) Contrary to their affirmative factual allegations that the casualty was the result of modifications to the BOP, operational failures taking place long after Cameron sold the BOP, the operators' choice of drill pipe, or the failure of BP or others to equip the rig with additional safety devices, Plaintiffs allege that pre-existing defects in the BOP were the "reason" for the casualty. (Compl. ¶ 130.)

Conspicuously absent in the Complaint is any allegation of fact that Cameron did anything other than sell equipment. The Complaint contains no specific factual allegation that Cameron did anything to cause any equipment to fail as alleged. The Complaint affirmatively alleges that the BOP's were in the care, custody, and control of Defendants other than Cameron at the time of the casualty.

## ARGUMENT

OPA's comprehensive and exclusive claims payment system precludes Plaintiffs' purported case against Cameron for the damages sought in the Complaint. Under applicable pleading standards, moreover, the Complaint's allegations fail to state a claim upon which relief can be granted against Cameron.

### I.   The Complaint Should Be Dismissed Without Prejudice Because Plaintiffs' Claims Are Encompassed by the Comprehensive and Exclusive Claims Payment System of the Oil Pollution Act of 1990

OPA establishes a comprehensive federal remedial scheme for the recovery of all damages of the types claimed by Plaintiffs in the Complaint, providing an exclusive statutory procedure designed to provide full and complete recovery for all actual economic harm from

designated "responsible parties." This statutory remedial scheme is exclusive; it precludes claimants from asserting rights to recover from other parties the specified categories of damages, particularly including the types of damages alleged in the Complaint. *See Gabarick v. Laurin Maritime (America) Inc.*, 623 F.Supp.2d 741 (E.D. La. 2009). Because Cameron is not a responsible party under OPA, Plaintiffs' claims are precluded. Accordingly, those claims should be dismissed without prejudice.

Importantly, dismissal of Plaintiffs' purported claims against Cameron without prejudice will not impair Plaintiffs' ability to recover for all actual economic harm. Full compensation remains available to Plaintiffs under the strict liability and payment provisions of OPA itself.

## A. The Comprehensive and Exclusive Liability Scheme Enacted in OPA

The OPA system for oil spill liability and payment of claims is explicitly exclusive. OPA mandates that, "[n]*otwithstanding any other provision or rule of law*, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged" is strictly "liable" to pay specified "damages." 33 U.S.C. § 2702(a) (emphasis added). This was not a slip of the Congressional pen. The legislative history makes clear that Congress consciously designed an exclusive liability and payment system. "It is important to note that following enactment, liability and *compensation for oil pollution* removal costs and *damages* caused by a discharge from a vessel or facility (as defined in this [bill]) *will be determined in accordance with this [legislation]*." H.R. CONF. REP. NO. 101-653, 1990 U.S. CODE CONG. & ADM. NEWS ("1990 U.S.C.C.A.N.") 779, 802 ("CONF. REP."), repeating the language of S. REP. NO. 101-94, 1990 U.S.C.C.A.N. 722, 746-47 ("S. REP.") (emphasis added).

OPA was meant "to create *a single Federal law providing* cleanup authority, penalties, and *liability for oil pollution*." S. REP., 1990 U.S.C.C.A.N. at 730 (emphasis added).

Under OPA, the President is given the authority to designate the statutory "responsible party" strictly liable for removal costs and specified damages under the Act. 33 U.S.C. § 2714(a). In this case it beyond dispute that the designated responsible parties are a BP entity defendant (lessee/operator of the offshore facility) and a Transocean entity (owner of the vessel). *See* Compl. ¶ 36 (BP has been designated "the responsible party"). *See* 33 U.S.C. § 2701(32) (owners of vessels and lessees operating offshore facilities).

As the Complaint affirmatively concedes, this strict liability extends to the property damage claims made by Plaintiffs. 33 U.S.C. §§ 2702(b)(2). The responsible parties' strict liability under OPA thus encompasses all damages claimed by Plaintiffs in the Complaint.

In this context, the statute sets forth a *mandatory* procedure by which a damaged party is to invoke a responsible party's strict liability. OPA explicitly states that "*all* claims for removal costs or damages *shall* be presented first to the responsible party." 33 U.S.C. § 2713(a) (emphasis added). Only if the responsible party denies the claim or fails to settle it within 90 days may the claimant then sue "the responsible party or guarantor." 33 U.S.C. § 2713(c)(2). Alternatively, under subsection 2713(c), the claimant may "present the claim to" the Oil Spill Liability Trust Fund ("the Fund") established by 26 U.S.C. § 9509. In that event, the Fund is required to pay any valid claim not paid by the responsible party. 33 U.S.C. § 2713(d).

The remaining remedial provisions of OPA plainly depend on the proper invocation of this claims presentment process channeling liability to designated responsible parties. Any party incurring liability under OPA "may bring a civil action for contribution" in specified

7

circumstances. 33 U.S.C. § 2709. Such a contribution action may be brought within three years of (1) a judgment imposing liability under OPA or (2) entry of a judicially approved settlement with respect to costs or damages encompassed by OPA. 33 U.S.C. § 2717(f)(3)(A) and (B). Furthermore, when a responsible party or the Fund pays a claim, the paying entity "shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law." 33 U.S.C. § 2715(a). And the statute specifically addresses litigation of the subrogated claimants' rights, permitting commencement of such a subrogation claim by the paying party within three years of "the date of payment of such claim." 33 U.S.C. § 2717(f)(4).

By means of its strict liability structure and payment system, therefore, OPA expressly channels the rights of claimants into subrogation litigation to be brought (if at all) by the paying responsible party or the Fund after payment under OPA or litigation to judgment under OPA. Once again, this approach was not inadvertent. Congress plainly understood that these provisions of OPA would dispense with traditional litigation over a claimant's rights or claims against other parties. The pertinent Senate Report expressly noted that "*litigation* or lengthy adjudicatory proceedings *over liability*, defenses, *or the propriety of claims should be reserved for subrogation actions* against dischargers." S. REP., 1990 U.S.C.C.A.N. at 732. It is clear that Congress consciously designed an efficient remedial system, centralizing difficult litigation in a few contribution or subrogation lawsuits – thereby avoiding potentially thousands of individual suits by claimants against third parties.

In conclusion, OPA establishes a streamlined procedure under which claimants present their claims and then recover from the responsible parties or the Fund without having to prove fault. Any disputes over any ultimate liability of other parties are confined to litigation between

those who paid the claims, *i.e.,* the responsible parties and/or the Fund, and any third parties who may be liable under traditional legal principles. There is no need or reason for claimants, such as Plaintiffs here, to sue third parties directly, and OPA does not allow it. Indeed, permitting such suits would subvert the statutory scheme and introduce unnecessary layers of complex litigation that Congress deliberately sought to avoid.

### B. The OPA Remedies Foreclose Claims Against Those Who Are Not Responsible Parties

The comprehensive and exclusive OPA remedies preclude any claim against any defendant that is not a responsible party designated pursuant to OPA. That is the precise holding in the *Gabarick* case cited above.

In that case, the defendants argued that OPA pre-empted all claims for damages encompassed by OPA section 2702(b). The plaintiffs argued against statutory preemption, in part relying upon a savings clause in OPA which provides that "[e]xcept as otherwise provided in this Act, this Act does not affect (1) admiralty and maritime law . . ." 33 U.S.C. § 2751(e). But as Judge Lemelle explained in rejecting that argument, this clause simply means, as its literal language indicates, that the OPA "does not affect admiralty and maritime law *except as provided in the Act.*" *Gabarick*, 623 F.Supp.2d at 746 (emphasis added). Because the Act does in fact impose strict liability for specific types of damages, require presentment of claims for those damages, and prescribe who can be sued and when, it necessarily affects admiralty and maritime law in those respects; "the plain language of the statute indicates its mandatory and exclusive nature with respect to its covered damages." *Id.*

The conclusion in *Gabarick* was solidly grounded in Supreme Court precedent interpreting the preclusive effect of other similarly comprehensive statutory remedial schemes.

9

When Congress enacts a comprehensive remedial statute such as the OPA, the new federal remedies replace pre-existing common law or maritime causes of action; "the underlying legal basis" for such causes of action are "pre-empted by [the new federal] statute." *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 22 (1981). As Judge Lemelle further explained in *Gabarick*,

> When considering an issue similar to the one *sub judice*, the Supreme Court recognized the preemption of Federal Common Law and General Maritime Law by Congress's comprehensive legislation in the area of water pollution. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1 (1981). In finding that the Federal Water Pollution Control Act preempted federal common law of nuisance in the area of ocean pollution, the Court stated, "In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate. *Id.* at 15. . . . . OPA explicitly states the damages to which it applies and the remedy to be pursued. The courts are to recognize this direct answer of Congress rather than seek to subvert it by allowing pursuit of the types of claims covered by OPA under the general maritime law . . . .

623 F.Supp.2d at 747. *See also, e.g., Milwaukee v. Illinois*, 451 U.S. 304, 317 (1981) (Congress "occupied the field" by enacting the Clean Water Act).

As recognized in *Gabarick*, congressional intent furnishes "the ultimate touchstone in every pre-emption case." 623 F. Supp. 2d at 750 (quoting *Altria Group, Inc. v. Good*, 129 S.Ct. 538, 543 (2008)). Here, the intent of Congress, "articulated in both the express language of the statute and the legislative history, was to encourage settlement and reduce litigation in oil spill cases through the enactment of comprehensive federal legislation." *Gabarick*, 623 F.Supp.2d at 750. Legislation that, as the Senate Report makes clear, was expressly intended to "create a **single Federal law providing** cleanup authority, penalties, and **liability for oil pollution**." Accordingly, Judge Lemelle in *Gabarick* held that "[i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA, . . . Claimants should pursue claims

10

covered under OPA *only against the responsible party and in accordance with the procedures established by OPA.*" 623 F.Supp.2d at 750 (emphasis added). As asserted against a defendant *not* designated a responsible party, therefore, Judge Lemelle dismissed "all claims covered under 33 U.S.C. § 2702." 623 F.Supp.2d at 751. In recognition of the statutory mechanism converting the claimants' rights and claims into potential subrogation and contribution claims to be asserted by the responsible parties, the dismissal was entered without prejudice. *Id.*

### C.   OPA Precludes Plaintiffs' Claims Against Cameron

Plaintiffs clearly have not satisfied the statutory presentment requirement. Ninety days have not yet passed since the casualty itself. Once Plaintiffs have satisfied that presentment requirement and do not have their claims paid, they, like other claimants, may invoke OPA and will need only to demonstrate actual economic loss in order to recover. Alternatively, they can seek recovery from the Fund.

Plaintiffs allege that they have suffered damages, not that they have incurred liability or paid claims for which they might be entitled to be reimbursed under OPA. They therefore have asserted no claim for contribution under 33 U.S.C. § 2709, or for a subrogated claim under 33 U.S.C. § 2715(a). Instead, the damage claims for business revenue asserted by Plaintiffs are all encompassed by the damage categories specified in 33 U.S.C. § 2702(b). The necessary conclusion in this case, therefore, is the same as in *Gabarick*: "In light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA, . . . Claimants should pursue claims covered under OPA *only against the responsible party and in accordance with the procedures established by OPA.*" In short, Plaintiffs remain free to pursue their statutory remedy under OPA, so long as they comply with the mandatory claims presentment procedure.

11

But their Complaint against Cameron should be dismissed (without prejudice to the potential rights of the responsible parties) because their damage claims against Cameron are not permitted by OPA.

### D. OCSLA Requires Application of OPA

Plaintiffs rely on the Outer Continental Shelf Lands Act as adopting state law as federal law on the outer continental shelf. (Compl. ¶ 28.) *See* 43 U.S.C. § 1333(a)(2) (the civil laws of the "adjacent State" as defined "are declared to be the law of the United States").[a] As explained in section B above, however, Congress specifically intended OPA to be the ***single Federal law providing*** cleanup authority, penalties, and ***liability for oil pollution.***" S. REP., 1990 U.S.C.C.A.N. at 730 (emphasis added). As the single federal law providing liability for oil pollution from OCSLA based facilities, therefore, OPA unquestionably pre-empts resort to any provision of OCSLA as an additional federal law providing liability for oil pollution. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 22 (1981); *Milwaukee v. Illinois*, 451 U.S. 304, 317 (1981).[b]

---

[a] Plaintiffs' attempt to invoke Alabama law pursuant to the state law borrowing provision of OCSLA fails in any event. The Complaint affirmatively alleges that the well being drilled from the Deepwater Horizon was situated "in Mississippi Canyon Block 252." (Compl. ¶ 32.) As a matter of law, that physical location is closest to the coast of Louisiana, making Louisiana the "adjacent state" whose laws would be borrowed under OCSLA, if those laws applied and were "not inconsistent" with "other Federal laws." 43 U.S.C. § 1333(a)(2). Even assuming arguendo that Louisiana law applied and was not inconsistent with federal law, the economic loss rule under Louisiana law would bar recovery from Cameron. *See PPG Indus., Inc. v. Bean Dredging*, 447 So.2d 1058, 1062 (La. 1984).

[b] OPA expressly refers to OCSLA; indeed, the responsible party for an "offshore facility" as defined in OPA is a lessee of federal property under OCSLA, 33 U.S.C. § 2701(32)(C). Plaintiffs, moreover, identify certain defendants in this case as OCSLA lessees. Despite its reference to OCSLA, however, nothing in OPA purports to preserve any claim for liability under OCSLA. Furthermore, OCSLA expressly provides that the "laws" of the "United States are extended to the subsoil and seabed of the outer Continental Shelf" and to "all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing or producing resources therefrom," and those federal laws thus apply "to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction within a State." 43 U.S.C. § 1333(a)(1). Under OCSLA itself, therefore, OPA would apply in this case as the "law of the United States" extended to oil development on the outer Continental Shelf.

## II.     The Complaint Should Be Dismissed for Failure to State a Claim

The Supreme Court has definitively established the pleading standards for a complaint under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007). Under Rule 8(a)(2), "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Id.*, quoting *Twombley*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

In this context, moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949, citing *Twombley*, 550 U.S. at 555. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950, citing *Twombley*, 550 U.S. at 556. And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950. Accordingly, when the complaint's "well-pleaded" facts do not push the pertinent claims "across the line from conceivable to plausible," the complaint should be dismissed. *Id.* at 1950-51, quoting *Twombley*, 550 U.S. at 570.

The Complaint in this case plainly fails the *Twombley/Iqbal* "plausibility" test. First, the Complaint plainly contains nothing more than "threadbare recitations of the elements of a cause

13

of action" against Cameron for product liability. Indeed, the facts actually pleaded in the Complaint point away from a plausible product liability claim against Cameron. The Complaint alleges that the BOP was modified after it was sold by Cameron so that the modified BOP did not match the design specifications. (Compl. ¶ 46.) The Complaint further alleges five separate reasons why the BOP *may* have failed -- perhaps because of the size of drilling pipe being used by BP and Transocean. (Compl. ¶ 47.) The Complaint also alleges that BP and perhaps other defendants failed to equip the Deepwater Horizon with additional safety features to supplement the known limitations of the BOP. (Compl. ¶¶ 54-57.) Far from "nudging" the claims against Cameron into plausibility, the facts affirmatively alleged in the Complaint make those claims highly implausible.

Under the teachings of *Twombley* and *Iqbal*, therefore, the Complaint does *not* "suffice" under Rule 8. The Court should not hesitate to dismiss Cameron from this action on the ground that the Complaint fails to state a claim upon which relief can be granted against Cameron.

Respectfully submitted,

David J. Beck (*pro hac vice*)
BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Telephone:   (713) 951-3700
Facsimile:   (713) 951-3720
dbeck@brsfirm.com

Randal H. Sellers (SELLR3398)
M. Warren Butler (BUTLM3190)
Bryan G. Hale (HALEB6964)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, Seventh Floor
Birmingham, Alabama 35209
Telephone:   (205) 868-6000
Facsimile:   (205) 868-6099
rhs@starneslaw.com
mwb@starneslaw.com
bgh@starneslaw.com

/s/   A. Danner Frazer, Jr.
A. Danner Frazer, Jr. (FRAZA9809)
Ross A. Frazer (FRAZR7422)
Robert J. Mullican (MULLR1788)
FRAZER, GREENE, UPCHURCH
   & BAKER, L.L.C.
107 St. Francis Street, Suite 2206
Mobile, Alabama 36602
Telephone:   (251) 431-6020
Facsimile:   (251) 431-6030
adf@frazergreene.com
raf@frazergreene.com
rjm@frazergreene.com

*Attorneys for Cameron International Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on July 2, 2010 electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF System which will automatically serve the same via electronic mail or by placing same in the United States mail, properly addressed, first class postage prepaid to the following:

M. Stephen Dampier, Esquire
LAW OFFICES OF M. STEPHEN DAMPIER, P.C.
55 North Section Street
Fairhope, Alabama 36532

Richard R. Barrett, Esquire
LAW OFFICES OF RICHARD R. BARRETT
Post Office Box 339
Lexington, Mississippi 39095

Don Barrett, Esquire
David McMullan, Esquire
Brian Herrington, Esquire
DON BARRETT, PA
Post Office Box 987
Lexington, Mississippi 39095

Zach Butterworth, Esquire
Gary Yarborough, Jr., Esquire
HESSE & BUTTERWORTH, PLLC
841 Highway 90
Bay St. Louis, Mississippi 39520

Larry D. Moffett, Esquire
DANIEL COKER HORTON & BELL
Post Office Box 1396
Oxford, Mississippi 38655

Randall A. Smith, Esquire
Zach Butterworth, Esquire
J. Geoffrey Ormsby, Esquire
Hiawatha Northington, II, Esquire
SMITH & FAER, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170

Dawn M. Barrios, Esquire
Bruce S. Kingsdorf, Esquire
Zachary L. Wool, Esquire
BARRIOS, KINGSDORF & CASTIEX, LLP
701 Poydras Street, Suite 3650
New Orleans, Louisiana 70139

Elizabeth A. Alexander, Esquire
LIEFF, CABRASER, HEIMANN & BERSTEIN
150 Fourth Avenue North, Suite 1650
Nashville, Tennessee 37219

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN & BERNSTEIN
275 Battery Street, 29th Floor
San Francisco, California 94111

Edward C. Taylor, Esquire
Brenda G. Long, Esquire
DANIEL COKER HORTON & BELL
Post Office Box 416
Gulfport, Mississippi 39502

Dewitt M. "Sparky" Lovelace, Esquire
Alex Peet, Esquire
LOVELACE LAW FIRM, PA
12870 U.S. Highway 98 West, Suite 200
Miramar Beach, Florida 32550

Charles Barrett, Esquire
BARRETT & ASSOCIATES, PA
6518 Highway 100, Suite 210
Nashville, Tennessee 37205

*Attorneys for Plaintiffs*

William H. Brooks, Esquire
John M. Johnson, Esquire
Adam K. Peck, Esquire
Marchello Dewaun Gray, Esquire
LIGHTFOOT, FRANKLIN & WHITE, LLC
400 North 20th Street
Birmingham, Alabama 35203

James Andrew Langan, Esquire *Pro Hac Vice*
John T. Hickey, Esquire *Pro Hac Vice*
Richard C. Godfrey, Esquire *Pro Hac Vice*
KIRKLAND & ELLIS, LLP
300 N. LaSalle
Chicago, Illinois 60654

*Attorneys for BP America, Inc. and BP Products North America, Inc, BP Company North America, Inc., BP Corporation North America, Inc.*

James J. Dragna, Esquire
BINGHAM McCUTCHEN
355 South Grand Avenue, Suite 4400
Los Angeles, California 90071-3106

Ky E. Kirby, Esquire
Michael B. Wigmore, Esquire
Warren Anthony Fitch, Esquire
BINGHAM McCUTCHEN
2020 K Street, NW
Washington, DC 20006-1806

Joel M. Kuehnert, Esquire
Sid J. Trant, Esquire
Reed Thomas Warburton
BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104

*Attorneys for Anadarko Petroleum Corporation and Moex Offshore 2007, LLC*

Blane H. Crutchfield, Esquire
Douglas L. McCoy, Esquire
HAND ARENDALL, LLC
Post Office Box 123
Mobile, Alabama 36601

*Attorneys for Transocean Offshore Deepwater Drilling, Inc. and Transocean Deepwater, Inc.*

John N. Leach, Jr., Esquire
Joseph P. H. Babington, Esquire
Russell C. Buffkin, Esquire
HELMSING, LEACH, HERLONG, NEWMAN & ROUSE, P.C.
Post Office Box 2767
Mobile, Alabama 36652

Bruce W. Bowman, Jr., Esquire
Donald E. Godwin, Esquire
Jenny L. Martinez, Esquire
Floyd R. Hartley, Jr., Esquire
Gavin Eugene Hill, Esquire
GODWIN RONQUILLO PC
1201 Elm Street, Suite 1700
Dallas, Texas 75270

Robert Alan York, Esquire
GODWIN RONQUILLO PC
1331 Lamar, Suite 1665
4 Houston Center
Houston, Texas 77010

*Attorneys for Halliburton Energy Services, Inc.*

Thomas M. Galloway, Jr., Esquire
GALLOWAY, ETTERMARK, EVEREST, RUTENS & GAILLARD, LLP
3263 Cottage Hill Road
Mobile, Alabama 36606

*Attorney for M-I, LLC*

s/ A. Danner Frazer, Jr.