# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| FERGUSON, *et. al.,* | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | )   Case No. cv-10-00281-KD-N |
| | ) |
| BP, PLC., *et. al.*, | )   <u>Oral Argument Requested</u> |
| | ) |
| *Defendants*. | ) |
| | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS
ANADARKO PETROLEUM CORPORATION
AND MOEX OFFSHORE 2007 LLC
<u>TO DISMISS COMPLAINT PURSUANT TO FED R. CIV. P. 12(b)(6)</u>**

Attorneys for Anadarko Petroleum
Corporation and MOEX Offshore
2007 LLC

**BRADLEY ARANT BOULT
CUMMINGS LLP**

Sid J. Trant (TRANS4885)
Joel M. Kuehnert (KUEHJ6527)
R. Thomas Warburton
(WARBR7834)

One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................1

II.     FACTUAL ALLEGATIONS IN THE COMPLAINT .......................2

III.    ARGUMENT ......................................................................................3

        THE COMPLAINT SHOULD BE DISMISSED WITH RESPECT TO APC AND
        MOEX BECAUSE EACH OF THE COUNTS AGAINST THEM FAILS
        TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

A.      Plaintiffs' Claims Must Be Dismissed Because Plaintiffs Plead
        No Nonconclusory Allegation of Wrongful Conduct By APC or
        MOEX ................................................................................................4

        1.      The Complaint fails to allege any plausible,
                nonconclusory basis for APC and MOEX's purported
                direct liability ..........................................................................5

        2.      The Complaint also fails to allege any plausible,
                nonconclusory basis for APC and MOEX's purported
                indirect liability ......................................................................6

B.      The Economic Loss Rule Bars Counts III, IV and V ......................11

C.      Count I Fails to State a Claim Of Trespass .....................................14

D.      Count II Fails to State a Claim Of Nuisance ...................................18

        1.      Plaintiffs fail to state a claim of private nuisance ..................19

        2.      Plaintiffs fail to state a claim of public nuisance ..................21

E.      Count V Fails To State A Claim Of Negligence Per Se Because
        Plaintiffs Do Not  Identify The Specific Statute Allegedly
        Violated ............................................................................................23

IV.     CONCLUSION ................................................................................24

# I.

## INTRODUCTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Anadarko Petroleum Corporation ("APC") and MOEX Offshore 2007 LLC ("MOEX") have moved to dismiss Counts I, II, III, IV, and V of Plaintiffs' Complaint, which are all the claims that Plaintiffs have brought against them.[1]

First, the Complaint should be dismissed for failure to state a claim upon which relief can be granted because Plaintiffs plead no nonconclusory allegations from which one could plausibly infer that APC and MOEX had actual operational involvement in the *Deepwater Horizon* drilling operation for which APC and MOEX could be found directly liable for any tortious conduct that occurred on board. Furthermore, Plaintiffs fail to plead any plausible nonconclusory basis for holding APC and MOEX indirectly liable for the alleged tortious conduct.

Second, Counts III (Negligence), IV (Wantonness) and V (Negligence *Per Se*) against APC and MOEX should be dismissed for failure to state a claim upon which relief can be granted, because they are barred by the economic loss rule.[2]

---

[1]     Plaintiffs bring their Sixth Claim for "Alabama Extended Manufacturer's Liability Doctrine" solely against defendant Cameron International Corporation.  Compl. ¶¶ 123-130.

[2]     Plaintiffs invoke both the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, (perhaps indicating an intention to assert claims under state law), and the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, (perhaps indicating an intention to assert claims under federal admiralty and maritime law), "including the laws of the State of Alabama which have been declared, pursuant to 43 U.S.C. § 1331(f)(1) and 1333(a)(2), to be the law of the United States… ."  Compl. ¶¶ 27 - 29.   While respectfully reserving their position on the choice-of-law issue, Defendants assume, *arguendo*, and solely for purposes of this motion, that

1

Third, Count I (Trespass) fails to state a claim upon which relief can be granted, because Plaintiffs fail to allege in more than conclusory fashion any of the essential elements of a trespass claim.

Fourth, Plaintiffs fail to state a claim for Nuisance (Count II), either public or private, because Plaintiffs fail to allege an impairment in the use and enjoyment of their own property, and fail to allege any factual basis for "special damages" in support of an individual claim for public nuisance.

Finally, Count V (Negligence *Per Se*) fails because Plaintiffs fail to allege any specific statute or regulation allegedly violated.

For all these reasons, and as discussed more fully hereinafter, all claims against APC and MOEX should be dismissed

## II.
## <u>FACTUAL ALLEGATIONS IN THE COMPLAINT</u>

Plaintiffs allege that the *Deepwater Horizon* was an ultra-deepwater, dynamically positioned semi-submersible oil drilling rig, owned by Defendant Transocean and leased to Defendant BP.  Compl. ¶ 31.  Defendant BP leased the

---

federal maritime or Alabama law applies to Plaintiffs' claims as Plaintiffs apparently assume. Defendants note that Plaintiffs are mistaken in their contention that 43 U.S.C. § 1331(f)(1), the Outer Continental Shelf Lands Act ("OCSLA"), would result in the application of Alabama law to this case. Compl. ¶ 28. 43 U.S.C. § 1333 adopts the law of the "adjacent state" to govern activities on the outer Continental Shelf when federal law does not already supply a rule of decision; section 1333, in other words, fills the interstices of incomplete federal law.  *See Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355-56 (1969).  Here, under the judicial test for adjacency, the State adjacent to the alleged oil spill is Louisiana, which is geographically closest to Mississippi Canyon Block 252, the alleged site of the discharge.  Compl. ¶ 32.  *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 523 (5th Cir. 2000).

*Deepwater Horizon* in order to drill exploratory wells at the Macondo prospect site on the outer continental shelf in the Gulf of Mexico.  Compl. ¶ 32.  According to Plaintiffs, Defendants BP, APC, and MOEX were the "holder[s]" of the lease. Compl. ¶ 14-16.  Plaintiffs allege that Defendant APC "owns a 25% stake in the Macondo prospect lease and that MOEX "holds a 10% stake."  Compl. ¶¶ 15,16.

On or about April 20, 2010, explosions occurred on the *Deepwater Horizon*, causing the rig to list, then sink to the ocean floor. Compl. ¶ 2.  After the explosion and sinking of the rig, oil began to discharge into the Gulf of Mexico.  Compl. ¶ 3. According to Plaintiffs, at the times relevant hereto "the *Deepwater Horizon* was owned, manned, possessed, managed, controlled, chartered and/or operated" by Defendant BP and Defendant Transocean.  Compl. ¶ 23.

Plaintiffs allege that they "are Illinois residents who own two condominiums on the Gulf of Mexico in Gulf Shores, Alabama." Compl. ¶ 5.  According to the Complaint, because of the oil spill, Plaintiffs have "lost approximately $14,000 in rental cancellations" and have experienced a diminution in value of their real estate.  Compl. ¶ 72-73.

### III.
### ARGUMENT

### THE COMPLAINT SHOULD BE DISMISSED WITH RESPECT TO APC AND MOEX BECAUSE EACH OF THE COUNTS AGAINST THEM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Dismissal under Rule 12(b)(6) eliminates a pleading or portion of a pleading

which fails to state a claim upon which relief can be granted.  *See Hancock v. Hood,* 686 F. Supp. 2d 1240, 1247-48 (S.D. Ala., 2010).  In order to state a claim for relief plaintiffs must state enough factual matter (taken as true) to suggest some plausible grounds for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 55 (2007); *Sinaltrainal v. Coca-Cola Co*., 578 F.3d 1252, 1268 (11th Cir. 2009).  In ruling on a motion to dismiss, well-pled allegations are construed in the light most favorable to the plaintiff. *Baggett v. First Premier Bank*, Civil Action No. 09-0364-KD-N,  2009 WL 2588890, at *1 (S.D. Ala., Aug. 19, 2009).  "However, even accepting the facts alleged as true, a court may grant a motion to dismiss if, 'on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" *Id. citing Marshall County Bd. of Educ. v. Marshall County Gas Dist*., 992 F.2d 1171, 1174 (11th Cir. 1993).  At this stage in the proceedings, the Court must focus on "whether the challenged pleadings give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Abrams v. Ciba Specialty Chems. Corp*., No. 08-0068-WS-B, 2008 WL 4183344, at *5 n.10 (S.D. Ala. Sept. 10, 2008) (internal quotation marks omitted). Under this standard, Plaintiffs' claims against APC and MOEX should be dismissed.

## A.   Plaintiffs' Claims Must Be Dismissed Because Plaintiffs Plead No Nonconclusory Allegation of Wrongful Conduct By APC or MOEX.

Plaintiffs' allegations as a whole are insufficient to state a claim for relief

against APC and MOEX.  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  The factual matter in a complaint must leave the impression that the defendant's liability is plausible.  The "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely *consistent with* a defendant's liability," it fails to state a plausible claim for relief, and should be dismissed. *Twombly*, 550 U.S. at 557 (emphasis added).  A fundamental "working principle[]" animates the plausibility standard:  a plaintiff cannot rest on "mere conclusory statements," *i.e.*, "a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  Rather, those must be ignored.

### 1.  The Complaint fails to allege any plausible, nonconclusory basis for APC and MOEX's purported direct liability.

Plaintiffs' only allegations as to APC and MOEX's involvement in the *Deepwater Horizon* drilling operation are entirely vague, conclusory, and unsupported by any allegations of fact that could support a finding of liability against APC and MOEX.  The only truly factual, nonconclusory allegations in the Complaint with respect to APC and MOEX are that each owns a minority interest in the Minerals Management Service lease that permits defendant BP to explore for oil in the Macondo Prospect.  Compl. ¶¶ 15, 16.  Neither APC nor MOEX are

mentioned again anywhere else in the complaint.

Thus, Plaintiffs' claims against APC and MOEX are based solely on their minority interests in the minerals lease.  But an interest in a minerals lease, by itself, does not plausibly lead to even an inference that APC and MOEX actually operated the *Deepwater Horizon* rig (in which APC and MOEX are not alleged to have any interest at all) or any other aspect of the drilling or the well. *See* Compl. ¶ 31 ("[The *Deepwater Horizon*] was owned by Transocean and leased to BP through September 2013").  With respect to nearly every other factual allegation in the Complaint, Plaintiffs indiscriminately "lump" all defendants together as if they constitute a single entity, without alleging any factual basis for doing so. *See, e.g,* Compl. ¶ 49 ("The risks of offshore drilling are well known to <u>Defendants</u>… ."); ¶ 56 ("<u>Defendants</u> could have installed a back up trigger to activate the BOP… .") ¶ 79 ("<u>Defendants</u> knew of the dangers associated with deep water drilling… .").

In sum, there is no plausible, nonconclusory allegation that APC and MOEX actually participated in the allegedly negligent drilling operations.  The Complaint, therefore, provides no basis on which APC or MOEX could be found directly liable. *Iqbal*, 129 S. Ct. at 1949.

**2.      The Complaint also fails to allege any plausible, nonconclusory basis for APC and MOEX's purported indirect liability.**

Because Plaintiffs fail to allege any conduct on the part of MOEX and APC that would give rise to direct liability, Plaintiffs resort to asserting that "[t]he

explosion and fire on the *Deepwater Horizon*, its sinking and the resulting oil spill were caused by the negligence of Defendants, which renders them jointly and severally liable to Plaintiffs and the Class Members for all their damages." Compl. ¶ 63; Compl ¶ 106; *see also* Compl. at 26.   But this is only a wishful legal conclusion in the guise of a factual allegation. *Iqbal*, 129 S. Ct. at 1949.  Plaintiffs fail to allege any facts, because none exist, supporting their hoped-for conclusion that APC and MOEX were engaged in a joint venture with the other defendants such that all defendants could be found jointly and severally liable. *See Underwood v. Holy Name of Jesus Hosp*., 266 So.2d 773, 776 (Ala. 1972) (holding that "[t]he negligence of one participant in the joint venture or enterprise may be imputed to another participant so as to render the latter liable for an injury sustained by a third person as a result of the negligence..." but dismissing claim because plaintiff "d[id] not sufficiently allege a joint venture").

"The elements of a joint venture have been held to be: a contribution by the parties of money, property, effort, knowledge, skill, or other assets to a common undertaking; a joint property interest in the subject matter of the venture and a right to mutual control or management of the enterprise; expectation of profits; a right to participate in the profits; and usually, a limitation of the objective to a single undertaking or ad hoc enterprise." *Moore v. Merchants & Planters Bank*, 434 So.2d 751, 755 (Ala. 1983) (affirming trial court's directed verdict where plaintiff

presented no evidence of control).  The Alabama Supreme Court has explained that "[w]hile every element is not necessarily present in every case, it is generally agreed that in order to constitute a joint venture, there must be a community of interest and a right to joint control." *Flowers v. Pope*, 937 So.2d 61, 66 (Ala. 2006).  Accordingly, "in order for joint venturers to be held vicariously liable for one another's negligent acts done within the scope of joint venture, there must at least be a right to direct and govern movements and conduct of each other in respect to the undertaking… ." *Carlton v. Alabama Dairy Queen, Inc.,* 529 So.2d 921, 923 (Ala. 1988) (affirming summary judgment of trial court where plaintiff failed to present evidence that defendant controlled alleged tortfeasor's operation). Plaintiffs fail to allege any *facts* from which one could plausibly infer that APC or MOEX had authority to control the *Deepwater Horizon* drilling operation, let alone authority equal to that of BP's or any other defendants' authority.

Equal right to control the operation is paramount, because, as a matter of law, a non-operating partner of a mining venture cannot be liable for the negligence of the operating partner, absent authority of the non-operating partner to control the enterprise.  *See Bolivar v. R & H Oil and Gas Co., Inc.*, 789 F. Supp. 1374, 1381-82 (S.D. Miss. 1991); *James v. Nico Energy Corp.*, 838 F.2d 1365,

1373 (5th Cir. 1988)[3] (no joint venture where one party's involvement in wells was limited to investment of capital and another party had sole right of control in drilling and operating of wells); *Blocker Exploration Co. v. Frontier Exploration, Inc.,* 740 P.2d 983, 988 (Colo. 1987) (no joint venture where non-operating owner merely invested funds and there was no right of participation in management and control of operation); *Archer v. Bill Pearl Drilling Co., Inc*., 655 S.W.2d 338, 344 (Tex. App. 1983) (no joint venture in negligence action as a matter of law where co-owner merely invested in venture but exercised no right to participate in control or operation of drill site); *Ayco Dev. Corp. v. G.E.T. Serv. Co*., 616 S.W.2d 184, 186 (Tex. 1981) (no joint venture where defendants merely invested by paying costs of drilling well but did not participate in actual drilling, operation and control of the well); *Transcontinental Gas Pipe Line Corp. v. Mr. Charlie*, 294 F. Supp. 1025, 1031 (E.D. La. 1968) (oil company could not recover from non-operators where operator, but not non-operators, was negligent), *rev'd on other grounds*, 424 F.2d 684 (5th Cir.), *cert. denied*, 400 U.S. 832 (1970).  Because Plaintiffs fail to make any allegation that APC or MOEX had authority to exercise control over the operations at issue, there is no plausible basis on which APC or MOEX could be

---

[3]      Fifth Circuit decisions rendered prior to October 1, 1981 are binding precedent upon courts in this Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

found indirectly or vicariously liable for the tortious conduct that is alleged in the Complaint.

With respect to control of the *Deepwater Horizon* and its drilling operations, Plaintiffs specifically allege that "[a]t all times material hereto, the *Deepwater Horizon* was owned, manned, possessed, managed, controlled, chartered and/or operated by Transocean and/or BP." Compl. ¶ 23.  In contrast, Plaintiffs at no point allege any facts that might establish that APC or MOEX had any ownership, management role, or operational role whatsoever in the *Deepwater Horizon*.  For example, Plaintiffs do not allege that there were APC or MOEX employees or contractors on board the *Deepwater Horizon*.  Nor do Plaintiffs allege that APC or MOEX had an agreement with BP or Transocean which might have given them responsibility for or control over the operation of the *Deepwater Horizon* rig or any other aspect of the drilling operations.  Moreover, Plaintiffs do not allege that APC and MOEX had any interest whatsoever in the *Deepwater Horizon*, on which the alleged tortious conduct took place, nor any interest in the broken riser pipe discharging oil from the well.  APC and MOEX are only alleged to own minority interests in the lease granted by the U.S. Minerals Management Service.

Because Plaintiffs fail even to conclusorily allege that APC or MOEX had any authority to control the operation, Plaintiffs' claims alleging joint and several liability for trespass (Count I), nuisance (Count II), negligence (Count III),

wantonness (Count IV), and negligence *per se* (Count V) fail as a matter of law, and should be dismissed.  *See, e.g., Tuley v. Heyd*, 482 F.2d 590, 594 (5th Cir. 1973) (remanding for dismissal of complaint because "pleading … fails to indicate any direct, personal involvement of either defendant … [and] also fails to allege any arguable basis for vicarious liability").

**B.    The Economic Loss Rule Bars Counts III, IV and V.**

Counts III (Negligence), IV (Wantonness) and V (Negligence *Per Se*) are barred by the economic loss rule and should be dismissed.  Under the economic loss rule, a plaintiff asserting negligence cannot recover for pure economic losses absent an injury to person or property. *See Kingston Shipping Co., Inc. v. Roberts*, 667 F.2d 34 (11th Cir. 1982) ("[A] party may not recover for economic losses not associated with physical damages.").  "In essence, the economic loss rule is based on the premise that disappointed economic expectations are protected by contract law, while tort law protects persons and property… ."  *Everett v. Brad Ragan, Inc.*, No. CIV.A.99-663CBC, 2000 WL 360240, at *2 (S.D. Ala. Mar. 28, 2000).

Plaintiffs fail to specify whether they assert their causes of action against APC and MOEX pursuant to the law of Alabama, or federal admiralty and maritime law.[4]  In the end, the bases for Plaintiffs' claims do not matter, because

---

[4]    It is clear that Plaintiffs' claims are not brought under the federal Oil Pollution Act, 33 U.S.C. §§ 2701 *et seq.*, which is nowhere mentioned in the Complaint.  While respectfully reserving their position on the choice-of-law issue, Defendants assume, *arguendo*,

Plaintiffs' claims are barred under both the law of Alabama and federal maritime law.

Insofar as Plaintiffs' claims are based on federal maritime law, Eleventh Circuit precedent compels the claims' dismissal: "[A] party may not recover for economic losses not associated with physical damages." *Kingston Shipping Co., Inc. v. Roberts*, 667 F.2d 34 (11th Cir. 1982); *Miller Industries v. Caterpillar Tractor Co.,* 733 F.2d 813, 819 (11th Cir. 1984); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006) (maritime law "does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit.")(citing *Robins Dry Dock & Repair v. Flint*, 275 U.S. 303, 309 (1927) and *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1023 (5th Cir. 1985)); *Dunham-Price Group, LLC v. CITGO Petroleum Corp.*, No. 2:07 CV 1019, 2010 WL 11285446, at \*3 (W.D. La, Mar. 31, 2010) (denying plaintiffs' state law claims for economic losses resulting from negligence under *Robins* rule).

Alabama courts have likewise applied the economic loss rule to claims for purely economic damages in negligence cases. *See Harris Moran Seed Co., Inc., v. Phillips*, 949 So.2d 916, 931 (Ala. Ct. Civ. App. 2006) ("Under [the economic-

---

and solely for purposes of this motion, that federal maritime or Alabama state law applies to Plaintiffs' claims, as Plaintiffs apparently assume.

loss] rule, a cause of action does not arise under tort theories of negligence, wantonness, [or] strict liability" without damage to other property or person.); *Wellcraft Marine, a Div. of Genmar Industries, Inc. v. Zarzour*, 577 So.2d 414 (Ala. 1990) (applying economic loss in products liability context); *Lloyd Wood Coal Co. v. Clark Equip. Co*., 543 So.2d 671 (Ala. 1989) (no cause of action arises in tort for pure economic losses); *see also*, *Fidelity & Guaranty Fire Corporation, Baltimore v. Silver Fleet Motor Express*, 7 So.2d 290, 292 (Ala. 1942) ("Aside from public wrongs, an act is not wrongful because of injury to things, it is wrongful because hurtful to another, and becomes an actionable tort because it has done *injury to the personal or property right of another*.") (emphasis supplied). Indeed, the Fifth Circuit has observed that "courts applying the tort law of ... Alabama … have consistently denied recovery for economic losses negligently inflicted where there was no physical damage to a proprietary interest." *State of La, ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1027 (5th Cir. 1985) (citing *Purcell Co., Inc. v. Spriggs Enterprises, Inc*., 431 So. 2d 515 (Ala. 1983) for the proposition that Alabama courts "refuse recovery for wrongful interference with contractual or business interests where the offensive conduct is unintentional"). The economic loss rule applies equally to Alabama common law claims of negligence, wantonness and strict liability. *See Harris Moran Seed Co., Inc., v. Phillips*, 949 So.2d 916, 931 (Ala. Ct. Civ. App. 2006) ("Under [the economic-

loss] rule, a cause of action does not arise under tort theories of negligence, wantonness, [or] strict liability" for pure economic damages.).

Plaintiffs are owners of real estate in Gulf Shores, Alabama.  Compl. ¶ 72. Plaintiffs allege that the spill has caused or will cause damage to Alabama's beaches. Compl. ¶ 67.  Plaintiffs further allege that as a result of the contamination of the public waters and beaches, Plaintiffs have suffered and will continue to suffer economic losses, including "loss of property value, rental value, and rental income… ."  Compl. ¶¶ 71.  Plaintiffs do not allege injury to their person or contamination of their own property; Plaintiffs allege only that they anticipate that the public waters and beaches adjacent to their property will be damaged.  Compl. ¶ 68-73.  Thus, Plaintiffs seek purely economic losses.  Accordingly, Plaintiffs' claims asserting negligence (Count III), wantonness (Count IV), and negligence *per se* (Count V) should be dismissed with prejudice.

## C.   Count I Fails to State a Claim Of Trespass.

Under Alabama law, there are two forms of actionable trespass: direct trespass and indirect trespass.[5]  Plaintiffs fail to specify under which rubric they bring their claim, but it matters little, because Plaintiffs fail to state a valid claim for either.

---

[5]      Again, solely for purposes of this Motion, Defendants assume that Alabama law provides the rule of decision for Plaintiffs' trespass claim, and reserve the right to argue that federal admiralty and maritime law, or the law of another state, properly should be applied.

In order to state a claim for direct trespass, a plaintiff must allege that the defendant intentionally "enter[ed] upon land in the possession of another or … intentionally cause[d] some 'substance' or 'thing' to enter upon another's land." *Russell Corp. v. Sullivan*, 790 So.2d 940, 945 (Ala. 2001) *citing Rushing v. Hooper-McDonald, Inc*., 300 So.2d 94 (1974).  In order to state a claim of indirect trespass, a plaintiff must allege: "1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damage to the res." *Id.*, *citing Borland v. Sanders Lead Co*., 369 So.2d 523, 529 (Ala. 1979).

Plaintiffs fail to sufficiently allege the basic elements of a trespass.  First, Plaintiffs fail to allege in more than conclusory fashion that any of the defendants, let alone APC and MOEX individually, <u>intentionally</u> caused any substance or thing to enter upon Plaintiffs' land, or otherwise <u>intended</u> to take any act resulting in the alleged invasion.  *See* Compl. ¶¶ 87-95.  Indeed, Count I specifically alleges that it was defendants' "wanton or reckless conduct," as opposed to intentional conduct, that resulted in the alleged contamination -- neither of which satisfies the elements of a claim of trespass. Compl. ¶ 95.

Second, Plaintiffs fail to allege the entry of any substance or thing onto <u>Plaintiffs' land</u>.  Plaintiffs allege only that they anticipate that the public waters and

beaches adjacent to their condominium units will be damaged.  Compl. ¶  68-73.

Plaintiffs conclusorily allege that "[b]y discharging polluting matter, Defendants

entered, invaded and intruded on the properties of Plaintiffs and the Class

Members… ." Compl. ¶ 89.  But Plaintiffs must provide more than a "'formulaic

recitation of the elements of a cause of action.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d

1289, 1295 (11th Cir. 2007) (internal quotation marks omitted) (*quoting Twombly*,

550 U.S. at 555).   Plaintiffs do not allege any *facts* demonstrating that their

condominium units have been "intruded upon."  Nor do Plaintiffs allege that they

have an ownership or possessory interest in the waters and beaches that allegedly

have been or will be impacted.   In the absence of any factual allegation that

contamination has "intruded" upon Plaintiffs' real property, "trespass, even of an

indirect nature, can not be maintained in this action." *See Sears v. Pharmacia

Corp., f/k/a Monsanto Co.*, No. CV. 05-1493, 2007 WL 2211352 (Ala. Cir. Ct.,

Jan. 4, 2007);  *Evans v. Walter Industries, Inc.*, 579 F.Supp.2d 1349, 1369 (N.D.

Ala., 2008) ("[I]ntrusion upon land possessed by a plaintiff, without his consent, *is*

an essential element of trespass.") (emphasis in original) *citing Harding v.

Bethesda Reg'l Cancer Treatment Ctr.*, 551 So.2d 299, 301 (Ala.1989).

Plaintiffs also fail to allege substantial damage to the land.  The requirement

that plaintiffs plead substantial damage is important because "there is a point

where the entry is so lacking in substance that the law will refuse to recognize it,

applying the maxim *De minimis non curat lex* -- the law does not concern itself with trifles." *Borland v. Sanders Lead Co.*, 369 So.2d 523, 529 (Ala. 1979).  Here, Plaintiffs summarily allege that their properties have been "invaded" but provide no explanation or example of how such contamination resulted in substantial damage to their land. Compl. ¶ 89.  To the extent Plaintiffs allege damages at all, any such damages are alleged to stem not from damage to land, but because "vacationers, beachgoers and boaters are avoiding the region, planning their trips to other destinations instead."  Compl. ¶ 69.  Indeed, Plaintiffs fail even to make the general allegation that they suffered "substantial damage."

Finally, Plaintiffs fail to allege facts that would substantiate the necessary exclusive possession of land.  Under Alabama law, landlords "have no right to possession of the property, and trespass is a wrong relating to the right of possession." *AmSouth Bank, N.A. v. City of Mobile*, 500 So. 2d 1072, 1075 (Ala. 1986) (finding that landlords had no standing to assert a trespass claim); *Lacey v. Morris*, 110 So. 379, 380 (Ala. 1926) ("landlord who has granted this possession to a tenant for a definite term has no immediate right of possession and cannot maintain the [trespass] action during such term").  Far from establishing an exclusive possessory right to the properties, Plaintiffs specifically allege that the properties concerned are rental properties, Compl. ¶ 72, and they have not specifically alleged that an actual trespass of the rental property occurred during a

period of their exclusive possession of the leasehold, resulting in further failure to adequately state a claim of trespass.

For all of the foregoing reasons, Plaintiffs' trespass claim should be dismissed.

**D.    Count II Fails to State a Claim Of Nuisance.**

"'A 'nuisance' is anything that works hurt, inconvenience or damage to another'" in the use and enjoyment of property. *Russell Corp. v. Sullivan*, 790 So.2d 940, 945 (Ala. 2001); Ala. Code 1975, § 6-5-120.[6]   In Alabama, a nuisance can be either private or public. *Russell Corp. v. Sullivan*, 790 So.2d 940, 945 (Ala. 2001).  "A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals.  A private nuisance is one limited in its injurious effects to one or a few individuals." *Id.* citing, Ala. Code 1975, § 6-5-121.

The distinction between a private nuisance and a public nuisance is an important one.  "A private nuisance gives a right of action to the person injured" while "a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state." *Id.*; Ala. Code 1975, § 6-5-

---

[6]       This statute is a codification of Alabama's common-law nuisance principles. General federal maritime law does not recognize public nuisance claims.  *See, e.g., Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1032, n. 13. (5th Cir. 1985).   Accordingly, Defendants presume Plaintiffs intended to bring their nuisance claims pursuant to Alabama law, and assume solely for purposes of this Motion that Alabama law applies to Plaintiffs' purported cause of action.

121.  However, an individual may have a cause of action under a public-nuisance theory if that individual suffered a "special damage . . . in which the public does not participate." Ala. Code 1975, § 6-5-123.  In order to support an individual's cause of action for a public nuisance, the nuisance must cause a "special damage" that is different in "kind and degree from [the damage] suffered by the public in general." *City of Birmingham v. City of Fairfield*, 375 So.2d 438, 441 (Ala. 1979); Ala. Code 1975 § 6-5-123.

Plaintiffs fail to specify the exact the nature of their claim, and thus it is not clear whether Plaintiffs intend to plead a claim of public or private nuisance. Again it matters little, because Plaintiffs fail to state a claim for either private or public nuisance

### 1.    Plaintiffs fail to state a claim of private nuisance.

Plaintiffs assert that the alleged nuisance will impact "over 550,000 seasonal or vacation home or housing units along the Gulf coast;" this cannot plausibly be characterized as effecting only a "few individuals."  Compl. ¶ 68.  Ala. Code 1975, § 6-5-121.  Furthermore, the Alabama Supreme Court has held that the "discharge of contaminants into a public body of water constitutes a public nuisance" as a matter of law.  *Russell Corp. v. Sullivan*, 790 So.2d 940, 952 (Ala. 2001) ("While plaintiffs offered evidence that they were unable to use and enjoy the lake, the use and enjoyment of a public area is a public right. The alleged nuisance in this case

affects anyone who would want to use and enjoy Lake Martin, not just those who live on its banks. Any nuisance caused by the discharge of contaminated wastewater into Lake Martin is a public, not a private, nuisance.").

In addition, Plaintiffs fail to allege the requisite damages to support a private nuisance claim because Plaintiffs never allege impairment in the use and enjoyment of their *own* property.  In *Russell Corp.*, the Alabama Supreme Court analyzed the issue of whether certain property owners were entitled to damages based on a private nuisance.  Plaintiffs, owners of property adjacent to Lake Martin, brought a trespass and private nuisance claim against multiple defendants. *Id.* at 942. Plaintiffs alleged that the defendants discharged chemicals into a creek that eventually ran into Lake Martin. *Id.*

The court reversed a jury verdict in favor of plaintiffs on the private nuisance claim. *Id.* at 952. The court held that plaintiffs did not own Lake Martin, nor did Lake Martin run through the plaintiffs' property. *Id.* Consequently, "[t]hey did not suffer the type of damage anticipated where contaminated water causes a nuisance on someone's property as the water passes across the land." *Id.  Russell Corp.* is instructive.  Plaintiffs here allege only that they are unable to use and enjoy the public waters and beaches, in which they have no possessory or other interest.  Consequently, Plaintiffs fail to state a claim for private nuisance.

**2.      Plaintiffs fail to state a claim of public nuisance.**

In order for an individual to maintain an action for public nuisance "the individual must have sustained a 'special injury' which is different in degree and kind from the injury suffered by the public at large.  The individual has the burden to allege and to show this special injury." *Lower Commerce Ins., Inc. v. Halliday*, 636 So.2d 430, 431 (Ala. Civ. App. 1994).

Plaintiffs fail to allege any "special injury" not shared by the public as a whole.  Plaintiffs allege two harms: diminution of property value and loss of rental income.   The Alabama Supreme Court has long held that "the mere fact of diminution in value, without more" is unavailable as a ground for relief in nuisance.  *Fletcher v. Barnard*, 133 So. 29, 30 (Ala. 1931); *Deramus v. Alabama Power Co.*, 265 So.2d 609, 613 (Ala. Civ. App. 1972) (holding that depreciation in value of land due to a general fear of the presence of power lines is not compensable); *Russell Corp.*, 790 So.2d at 952.  Accordingly,  Plaintiffs' nuisance claims cannot survive on the sole basis of alleged diminution of property value.

With respect to the purported loss of rental income, Plaintiffs allege that they, like the general public, are unable to use the beaches adjacent to their condominium properties.  The Alabama Supreme Court stated in *Russell*:

> While plaintiffs offered evidence that they were unable to use and enjoy [Lake Martin], the use and enjoyment of a public area is a public right. <u>The alleged nuisance in this case affects anyone who would want to use and enjoy</u>

<u>Lake Martin, not just those who live on its banks.</u>

*Russell Corp*., 790 So.2d at 952-53 (emphasis supplied).  Like the plaintiffs in *Russell Corp.*, Plaintiffs complain only of an inability to use and enjoy public waters and beaches. Even if Plaintiffs may incur economic losses if the condition of the beaches causes some tourists not to visit Alabama, that situation is not, as it must be, a qualitatively "individualized harm" that is different in kind from that incurred by the general public.  If Plaintiffs' allegations were to be proven, no one in Alabama would be able to make use of the public beaches and waters, and all who derive their income in some way from the waters and beaches will have been similarly impaired.  *See Lower Commerce Ins., Inc. v. Halliday*, 636 So.2d 430, 431 (Ala. Civ. App. 1994) (holding that plaintiff failed to sustain burden of showing special injury with respect to nuisance caused by construction of boathouse because both the plaintiff's and the general public's access to water for recreation would be diminished by construction).

Plaintiffs have not alleged that they have a greater right to use the beaches and waters than the public at large.   Thus, Plaintiffs have not alleged a "special damage … in which the public does not participate" and therefore have not stated a cognizable claim for public nuisance.  In sum, Count II should be dismissed.

**E.      Count V Fails To State A Claim Of Negligence *Per Se* Because Plaintiffs Do Not Identify The Specific Statute Allegedly Violated.**

Plaintiffs' claim for Negligence *Per Se* under Alabama law fails because Plaintiffs make only a general allegation that the defendants violated "numerous state and federal laws, and permits issued under the authority of these laws." Compl. ¶¶ 119, 120.  One element of negligence *per se* under Alabama law is the violation of a specific statute or regulation.  *See Parker Bldg. Services Co., Inc. v. Lightsey*, 925 So. 2d 927, 931 (Ala. 2005).   In order to adequately plead a negligence *per se* claim in federal court, a plaintiff must identify the specific statute or regulation he believes has been breached to give defendant sufficient notice of the claim to formulate a response. *Gates v. W.R. Grace & Co.*, 2009 WL 1455316 (M.D. Fla. May 21, 2009).   In *Gates*, the plaintiff asserted a claim of negligence *per se*, alleging only that the defendants "violated various Federal, state and local environmental laws and regulations." *Gates*, 2009 WL 1455316 at *3. The court dismissed the claim, concluding that it failed to give fair notice of the grounds of the claim. *Id.*; *see also, Anchundia v. Northeast Utilities Serv. Co.*, 2010 WL 2400154 (E.D.N.Y.) ("Where plaintiff fails to identify the statute upon which the [negligence *per se*] claim is based, it is impossible to determine if the plaintiff was in a class sought to be protected by the statute or whether the injury suffered by the plaintiff was the type of injury the statute was designed to prevent. It is also impossible to assess whether the defendant breached a duty imposed by

statute."); *Holler v. Cinemark USA, Inc.*, 185 F. Supp.2d 1242, 1243-44 (D. Kan. 2002) ("Notice pleading requirements suggest that plaintiff must plead the specific statute on which he bases his claim for negligence *per se*.").

Plaintiffs here plead negligence *per se* in nearly identical terms to the claim dismissed for vagueness in *Gates*.  Accordingly, Count V should be dismissed for failure to state a claim on which relief can be granted.

## IV.
## <u>CONCLUSION</u>

For the foregoing reasons, all the claims asserted in the Complaint against APC and MOEX should be dismissed in their entirety.

Respectfully submitted,


/s/ Sid J. Trant_____
Sid J. Trant
(strant@babc.com)

One of the Attorneys for
Defendant Anadarko Petroleum Corp.
and MOEX Offshore 2007 LLC


<u>OF COUNSEL</u>

Joel M. Kuehnert
(jkuehnert@babc.com)
R. Thomas Warburton
(twarburton@babc.com)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North

Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

James J. Dragna
(Jim.Dragna@bingham.com)
BINGHAM MCCUTCHEN
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
(Ky.Kirby@bingham.com)
Michael B. Wigmore
(Michael.Wigmore@bingham.com)
Warren Anthony Fitch
(Tony.Fitch@bingham.com)
BINGHAM MCCUTCHEN
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record for all parties.

/s/ Sid J. Trant
OF COUNSEL