**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JAMES and CONSTANCE FERGUSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 1:10-cv-00281-KD-N |
| | ) | |
| BP, PLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF HALLIBURTON ENERGY
SERVICES, INC.'S MOTION TO DISMISS AND, ALTERNATIVELY,
FOR A MORE DEFINITE STATEMENT**

Defendant, Halliburton Energy Services, Inc. ("HESI"), respectfully files this memorandum in support of its motions asking the Court to dismiss all claims in the Class Action Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and, alternatively, to require Plaintiffs to file a more definitive statement of their pleading pursuant to Rule 12(e).

In this putative class action, Plaintiffs James and Constance Ferguson, owners of two condominiums in Gulf Shores, Alabama, generally assert claims for trespass, nuisance, negligence, wantonness, negligence *per se*, and the Alabama Extended Manufacturer's Liability Doctrine.[1]  Plaintiffs assert that the Defendants caused the Deepwater Horizon explosion and subsequent oil spill, allegedly resulting in damages due to Plaintiffs' alleged inability to rent and/or sell their property.  (Complaint ¶¶ 1, 33-34, 72-73).

---

[1] Plaintiffs' Alabama Extended Manufacturer's Liability Doctrine claim is only asserted against Defendant Cameron International Corporation, and only in connection with the blowout preventer ('BOP").  Accordingly, HESI will not address this claim in its Motion.

The Oil Pollution Act of 1990, 33 U.S.C. §§ 2701, *et seq.* ("OPA") provides the exclusive federal remedy for the categories of oil spill-related damages that Plaintiffs allege.  As the exclusive remedial scheme for such damages, OPA specifically preempts or displaces maritime tort claims seeking damages caused by oil spills.  Plaintiffs assert state law claims against HESI under Alabama law,[2] attempting to circumvent OPA's exclusive remedial scheme and its preemptive effect on maritime tort claims.  However, Plaintiffs lack state law causes of action against HESI as Section 1333(a)(2) of the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.* ("OCSLA")—which applies state law in certain instances on the Outer Continental Shelf—does not apply here.  Plaintiffs' claims arise, if at all, under maritime law and are, therefore, preempted by OPA.

In addition, because OPA applies to Plaintiffs' claims, this Court lacks subject matter jurisdiction over such claims due to Plaintiffs' failure to plead and/or comply with the statute's mandatory claims presentment procedure.  This failure provides both an independent and additional basis requiring dismissal of Plaintiffs' claims.  Moreover, Plaintiffs' OPA claims may only be asserted against a "responsible party" designated under the statute.  As HESI is not a designated "responsible party," Plaintiffs' claims must be dismissed.

Even assuming Plaintiffs' trespass, nuisance, negligence, wantonness, and negligence *per se* claims are properly asserted against HESI, such claims require dismissal under Rule 12(b)(6) because they are deficient under the Supreme Court's *Twombly/Iqbal* analysis and, to the extent they seek economic damages for Plaintiffs' alleged inability to rent or sell their property due to stigma damages or the anticipated landfall of oil, they are barred by the "economic loss" rule established under federal maritime law.

---

[2] *See* Complaint ¶ 28 (asserting that Plaintiffs' claims arise under Alabama law pursuant to §§ 1331(f)(1) and 1333(a)(2) of the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.* ("OCSLA"), which under certain circumstances borrows "adjacent state law" as a proxy for federal law).

Plaintiffs' claim for punitive damages must be dismissed as such damages are not recoverable under either OPA or maritime law for the damages they allege.

Therefore, HESI respectfully moves the Court to dismiss all claims asserted against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In the event that Plaintiffs' claims are not otherwise barred by OPA, HESI requests, in the alternative, that Plaintiffs be required to file a more definitive statement of their pleading pursuant to Rule 12(e).  In support of its motion, HESI submits the following memorandum:

## INTRODUCTION AND SUMMARY

This case arises out of the loss of the Deepwater Horizon, a semi-submersible drilling unit that Transocean owned and operated.  (Complaint ¶¶ 1, 31).  The fire, explosion, and subsequent sinking of the Deepwater Horizon resulted in the release of oil from the well.  (*Id.* ¶ 1).  As a result of the release, the Coast Guard first designated BP as a "responsible party" under OPA.[3]  HESI is not a designated "responsible party" under OPA.

The lead Plaintiffs in this putative class action allege that they own two condominiums "on the Gulf of Mexico."  (*Id.* ¶¶ 1, 5, 72).  Plaintiffs seek to certify a proposed class that includes "[a]ll owners of real property on the Gulf of Mexico on the southern shore of the State of Alabama who claim injury and/or damages as a result of the April 20, 2010 fire and explosion which occurred aboard the Deepwater Horizon drilling rig and the resulting oil spill."  (*Id.* ¶ 75).  Generally, the Complaint alleges that the acts of various defendants, including HESI, caused the

---

[3] Courts may consider facts not specifically alleged in the Complaint when considering a 12(b)(6) motion.  *See Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53-54 (11th Cir. 2006); *Brown v. S. Fla. Fishing Extreme, Inc.*, No. 08-CV-20678, 2008 U.S. Dist. Lexis 49452, at * 3-4 (S.D. Fla. June 27, 2008); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) ("materials that are part of a public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(B)(6) motion").

fire and explosion on board the Deepwater Horizon, its sinking, and the resulting oil spill.  (*Id.* ¶¶ 31-45, 63).

Approximately six weeks after the loss of the Deepwater Horizon, Plaintiffs filed this suit alleging loss of property value, rental value and rental income.  (*Id.* ¶¶ 71-73).  As discussed below, Plaintiffs' generalized, conclusory allegations fail to establish subject matter jurisdiction and fail to state a claim upon which relief can be granted.

## ARGUMENTS AND AUTHORITY

A.      **Legal Standard on Motion to Dismiss under Rule 12(b)(1) and (6)**

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action where the court lacks subject matter jurisdiction.  A motion to dismiss filed pursuant to Rule 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001); *see also McElmurray v. Consol. Gov't. of Augusta Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007).  A court may decide such a motion on one of three bases:  (1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the complaint, the undisputed facts in the record, and the court's own resolution of disputed facts.  *McElmurray*, 501 F.3d at 1251; *Ynclan v. Dep't of the Air Force,* 943 F.2d 1388, 1390 (5th Cir. 1991) (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)).  In a Rule 12(b)(1) motion, the burden of proving that jurisdiction exists falls to the party asserting jurisdiction.  *Ramming,* 281 F.3d at 161; *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 732 n.9 (11th Cir. 1982).

Similarly, Rule 12(b)(6) provides defendants a mechanism early in litigation for challenging a plaintiff's right to recover on a particular set of facts or a particular cause of action.  To that end, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. __,

129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). Although courts accept well-pleaded facts as true, the U.S. Supreme Court recently rejected the previously-applicable principle that a dismissal for failure to state a claim was improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Twombly*, 550 U.S. 544, 561 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Coventry First, LLC v. McCarty*, No. 09-11682, 2010 U.S. App. LEXIS 9227, at *4-5 (11th Cir. May 5, 2010) (citing *Castro v. Secretary of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006)).   Rather, to survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56.

**B.  Plaintiffs' Claims, if Any, Are Governed by Federal and/or General Maritime Law, not State Law.**

Plaintiffs assert claims against HESI generally for trespass, nuisance, negligence, wantonness, and negligence *per se* arising under Alabama law.  However, the damages they assert are precisely the types of damages that Congress intended to be recovered exclusively under OPA.  Plaintiffs' attempt to make an end run around OPA must fail.  Further, Plaintiffs have no legally viable state law claims for trespass, nuisance, negligence, wantonness, and negligence *per se* against HESI because, to the extent such claims are viable outside of OPA (and they are not), they arise under general maritime law, not under state law, and OPA specifically preempts general maritime law for claims recoverable under the statute.

But for Congress's enactment of OPA, Plaintiffs' claims would necessarily arise under the Court's admiralty jurisdiction, and general maritime law would apply, not state law.  Fed. R. Civ. P. 9(h) ("A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.")

Plaintiffs incorrectly assert that Alabama law applies to their claims pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331, *et seq.* ("OCSLA").   (Complaint ¶ 28). OCSLA operates so as to apply, as proxy for federal law, the law of "each adjacent State" to the situs of certain locations on the Outer Continental Shelf.  *See* 43 U.S.C. § 1333(a)(2)(A); *Gulf Offshore Co. v. Mobile Oil Corp.*, 453 U.S. 473, 480-81 (1981) ("OCSLA extends the 'Constitution and laws and civil and political jurisdiction of the United States' to the subsoil and seabed of the Outer Continental Shelf and to '*artificial islands and fixed structures*' built for discovery, extraction, and transportation of minerals. . . . All law applicable to the Outer Continental Shelf is federal law, but to fill the substantial 'gaps' in the coverage of federal law, OCSLA borrows the 'applicable and not inconsistent' laws of the adjacent States as surrogate federal law." (citations omitted) (emphasis added)); *Texaco Exploration and Prod., Inc. v. Amclyde Engineered Products Co, Inc.*, 448 F.3d 760, 772 (5th Cir. 2006) (same).  However, OCSLA's "adjacent state law" provision does not apply in this case.

To determine whether OCSLA's "adjacent state law" provision applies, the Court must employ a three-part test:  (1) the controversy must arise on a situs covered by OCSLA (*i.e.*, the subsoil, seabed, or artificial structure permanently or temporarily attached thereto); (2) Federal maritime law must not apply of its own force; and (3) the state law must not be inconsistent with federal law.  *See Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784 n.3 (5th Cir. 2009), *citing Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 355 (1969).

The distinction between a "fixed platform" and a "vessel" is important for purposes of determining whether a controversy arises "on a situs covered by OCSLA."  In *Offshore Logistics, Inc. v. Tallentire*, the Supreme Court stated:

> The intent behind OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State, and *not as vessels*, for purposes of defining the applicable law because maritime law was deemed inapposite to these *fixed structures*.

477 U.S. 207, 217 (1986) (emphasis added).  Thus, the purpose of OCSLA is to apply state law to actions arising on or related to fixed platforms or structures attached to the Outer Continental Shelf, while maritime law continues to govern actions arising on or related to a "vessel."

Applying the first prong of this test demonstrates that the Deepwater Horizon was *not* "a situs covered by OCSLA."  The Deepwater Horizon was neither an "artificial island" nor a "fixed structure" to which OCSLA's adjacent state law provision applies.  Rather, MODU (Mobile Offshore Drilling Unit) Deepwater Horizon was a "semi-submersible drilling rig" performing completion operations for BP on the Outer Continental Shelf.  (Complaint ¶¶ 31-32).  Indeed, the Deepwater Horizon was a "vessel" operating in navigable water at all relevant times.  Courts have consistently held that semi-submerged, mobile rigs like the Deepwater Horizon are "vessels," and not fixed platforms.[4]  *See Manuel v. P.A. W. Drilling & Well Serv., Inc.*, 135 F.3d 344, 351-52 (5th Cir. 1998) (holding that drilling craft was a vessel because it was a "highly

---

[4] That the Deepwater Horizon was a "vessel in navigation" is further supported by facts alleged in the public record. For example, certain Transocean employees and/or representatives of deceased persons who were aboard the Deepwater Horizon on April 20, 2010, have filed Jones Act suits asserting damages for injuries sustained in their capacity as "seamen" under the Jones Act.  In doing so, these plaintiffs have asserted admiralty jurisdiction and the application of maritime law, claiming that their injuries or damages were sustained as members of the crew on board Deepwater Horizon, "a vessel within the meaning of the Jones Act, 46 U.S.C. §§ 30104, *et seq.*"  *See, e.g.*, Plaintiffs Stephen and Sara Stones' Petition in Intervention at ¶¶ 9-10, 12, *Kleppinger v. Transocean Deepwater Offshore Drilling, Inc.*, Case No. 4:10-cv-01851 (S.D. Tex.).

Additionally, Transocean, the owner of the Deepwater Horizon, and related entities have filed a Petition under the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, seeking to have their liability capped for an amount equal to the value of the "vessel."  These Transocean entities have filed such Petition in their capacities as the "owner of the vessel."  *See* 46 U.S.C. §§ 30505(a), 30506(a)-(b); *see also* 46 U.S.C. § 30511(a) ("The *owner of a vessel* may bring a civil action in a district court of the United States for limitation of liability under this chapter." (emphasis added)).

mobile unit" deployed to nineteen different sites over two years); *Domingue v. Ocean Drilling and Exploration Co.*, 923 F.2d 393, 394 n.1 (5th Cir. 1991) ("We have consistently applied general maritime law [in Jones Act cases] . . . to accidents aboard special-purpose watercraft such as submersible, semi-submersible, jack-up, and other similar rigs."); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 n.5 (5th Cir. 1986) (finding semi-submersible drilling rig to be "indisputably a vessel"); *Colomb v. Texaco, Inc.*, 736 F.2d 218, 221 (5th Cir. 1984) (finding submersible drilling barge to be a "vessel" because it was "highly mobile" due to routine relocation); *Case v. Omega Natchiq, Inc.*, No. H-08-0835, 2008 U.S. Dist. LEXIS 52931, at *16, (S.D. Tex. July 10, 2008) ("In contrast to production platforms, semisubmersible drilling rigs are generally considered vessels under the Jones Act.").  Because the alleged torts neither occurred nor arose on a fixed platform or other artificial island over the Outer Continental Shelf, OCSLA does not apply.  *See Grand Isle Shipyard*, 589 F.3d at 784 ("In a tort action, if the tort occurs on navigable water instead of a fixed platform (or other structure attached to the seabed), the OCSLA situs requirement is not met.").

Under the second prong of the admiralty jurisdiction test, maritime law applies of its own force to alleged torts arising out of the Deepwater Horizon incident.  To determine whether admiralty jurisdiction exists over the alleged torts at issue, both a "location test" and a "connection-to-maritime-activity" test must be satisfied.  *In re Katrina Canal Breaches Litig.*, 324 Fed. Appx. 370, 376 (5th Cir. 2009); *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).  The "location test" requires the tort to have occurred on navigable water or, for an injury suffered on land, to have been caused by a vessel on navigable water.  *Grubart*, 513 U.S. at 534.  Plaintiffs clearly allege that the torts at issue occurred on navigable water.  The majority of the allegedly negligent acts purportedly occurred *on* the

Deepwater Horizon while it was afloat in navigable waters in the Gulf of Mexico. (*See* Complaint ¶¶ 63, 107(a)-(k)). Moreover, Plaintiffs allege damages to the Gulf of Mexico generally. (*Id.* ¶¶ 3-4). Thus, the location test for admiralty jurisdiction is satisfied.

Even assuming the Complaint can be construed as alleging damages to shoreline real or personal property,[5] Plaintiffs' claims still would arise under maritime law and not state law by virtue of the Admiralty Extension Act, 46 U.S.C. § 740, which extends admiralty and maritime jurisdiction to "all cases of damages or injury, to person or property, *caused by a vessel on navigable water,* notwithstanding that such damage or injury be done or consummated on land." (emphasis added). *See also Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1031 (5th Cir. 1985), *cert. denied*, 477 U.S. 903 (1986) (under Admiralty Extension Act, admiralty jurisdiction extends to claims for shoreside damages resulting from chemical spill caused by colliding ships on navigable waterway); *In re the Exxon Valdez*, 767 F. Supp. 1509, 1512 (D. Ala. 1991) (under Admiralty Extension Act, damages occurring on land due to oil spill emanating from vessel in navigable waters are maritime torts subject to admiralty jurisdiction).

With respect to the separate "connection-to-maritime-activity" test, "[o]il and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce." *Theroit v. Bay Drilling Corp.*, 791 F.2d 527, 538-39 (5th Cir. 1986); *Pippen v. Shell Oil Co.*, 661 F.2d 378, 384 (5th Cir. 1981). Further, oil spill cases involving seagoing vessels that spill oil directly into navigable waters have been held to be connected to maritime activity, and claims arising out of such oil spills (at least prior to the enactment of OPA) fall under general maritime law. *In re Exxon Valdez*, 767 F. Supp. at 1512-14 (damage claims resulting from oil spill cognizable under

---

[5] Plaintiffs vaguely allege that their property has been damaged by the oil spill. (Complaint ¶¶ 88-89, 99). However, Plaintiffs have not identified any real or personal property, owned by Plaintiffs, that is alleged to have been physically damaged. Rather, Plaintiffs assert economic damages in the nature of lost rental income and/or property value because of alleged oil contamination to the Gulf of Mexico generally. (*Id.* ¶¶ 71-73).

maritime law because they were "caused by a vessel on navigable water"); *Puerto Rico v. S.S. Zoe Colocotroni*, 628 F.2d 652, 672 (1st Cir. 1980), *cert. denied*, 450 U.S. 912 (1981).

Had OPA not been enacted, Plaintiffs' claims would have arisen, if at all, under general maritime law.[6]   OCSLA does not bring such claims within the purview of state law. Accordingly, Plaintiffs' improperly pled state law claims should be dismissed.  Even if Plaintiffs' ambiguous claims are construed to assert maritime tort claims, such claims are preempted or displaced by OPA.

**C.   Plaintiffs' Alleged Damages Demonstrate that OPA Is Their Exclusive Remedy.**

Plaintiffs' Complaint fails to mention OPA, couching all claims against HESI in terms of trespass, nuisance, negligence, wantonness, and negligence *per se*.   OPA, however, is the exclusive remedy for the types of damages alleged.  Plaintiffs cannot circumvent OPA with general state common law allegations.  OPA displaces all such claims and otherwise applicable federal laws as they pertain to causes of action and the recovery of damages arising from oil spills.  OPA was enacted by Congress in the wake of the Exxon Valdez oil spill to provide a prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims.  *Gatlin Oil Co. v. United States*, 169 F.3d 207, 209 (4th Cir. 1999).  The statute provides a comprehensive statutory framework for parties injured by oil spills in navigable waters to make claims to a designated responsible party for recovery of costs and damages.  *See* 33 U.S.C. §§ 2701, *et seq*.  OPA "represents Congress's attempt to provide a

---

[6] Even if § 1333(a)(2) of OCSLA were to apply so as to incorporate "adjacent state law," the statute likely would incorporate Louisiana law, not Alabama law, as a proxy for federal law.  At the time of the incident, the Deepwater Horizon was located off the coast of Louisiana, or at least closer to Louisiana's coast than Alabama's coast.  *See* Situation Status Map – July 1, 2010,
http://www.deepwaterhorizonresponse.com/posted/2931/20100701_0600_Situation_Status_Map.729419.pdf
(official website of the Deepwater Horizon Unified Command, showing the location of the Deepwater Horizon in relation to shorelines and state boundary lines of Gulf states).  The Court may consider facts not specifically alleged in the Complaint when considering a 12(b)(6) motion.  *See Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53-54 (11th Cir. 2006).

comprehensive framework in the area of marine oil pollution." *Tanguis v. M/V WESTCHESTER*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001) (citing *Rice v. Harken Exploration Co.*, 89 F. Supp. 2d 820, 822 (N.D. Tex. 1999)).  *See also United States v. Bodenger*, No. 03-272, 2003 U.S. Dist. LEXIS 16987, at *5-6 (E.D. La. Sept. 26, 2003) (noting that OPA "established a comprehensive Federal oil spill response and liability legislative framework").   Its purpose is "to promote settlement and avoid litigation." *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993).

Under OPA, injured parties may recover a broad range of damages from the responsible party:

(A) Natural resources

Damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee.

(B) Real or personal property

Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

(C) Subsistence use

Damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources.

(D) Revenues

Damages equal to the net loss of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by the Government of the United States, a State, or a political subdivision thereof.

(E) Profits and earning capacity

Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

(F) Public services

Damages for net costs of providing increased or additional public services during or after removal activities, including protection from fire, safety, or health hazards, caused by a discharge of oil, which shall be recoverable by a State, or a political subdivision of a State.

33 U.S.C. § 2702(b).

OPA provides the ***exclusive federal remedy for recovery of oil spill related damages***, preempting non-OPA-based claims for recovery of those damages. *See South Port Marine, LLC v. Gulf Oil Ltd. P'ship,* 234 F.3d 58, 65 (1st Cir. 2000) ("Congress intended the OPA to be the exclusive federal law governing oil spills."); *Gabarick v. Laurin Maritime (America) Inc.*, 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) ("This Court finds that an evaluation of the *Oswego* factors indicates that OPA preempts general maritime law claims that are recoverable under OPA."). Addressing the preemptive effect of OPA, it has been held that "all [general maritime law] claims that are recoverable under OPA, specifically those covered damages enumerated in 33 U.S.C. § 2702, are preempted by OPA." *Gabarick*, 623 F. Supp. 2d at 750-51. *See also National Shipping Co. of Saudi Arabia (NSCSA) v. Moran Mid-Atlantic Corp*., 924 F. Supp. 1436, 1447 (E.D. Va. 1996) ("Because OPA provides a comprehensive scheme for the recovery of oil spill cleanup costs and the compensation of those injured by oil spills, the general maritime law does not apply to recovery of these types of damages."). "OPA clearly preempts maritime law as to recovery of cleanup expenses and the cost of compensating injured persons." *National Shipping,* 924 F. Supp. at 1447.

Consequently, Plaintiffs' attempt to recover oil spill related damages covered by OPA under theories of trespass, nuisance, negligence, wantonness, negligence *per se* must fail. Plaintiffs claim to have lost $14,000 in rental cancellations due to the oil spill.  (Complaint ¶ 72). They also claim that their property was for sale at the time of the oil spill, and that "[t]hey have been informed by their realtor that the price of their property must be lowered from the pre-spill price if they are to have any chance of selling the property."  (*Id.* ¶ 73).  Additionally, Plaintiffs allege real and personal property damage, diminution in property value, loss of rental income, and loss of enjoyment of real property.  (*Id.* ¶¶ 93-94, 99, 105, 116).  Clearly, these damage categories are encompassed by § 2703(b) of OPA.  Because "Congress intended OPA to be the exclusive federal law governing oil spills," *South Port Marine*, 234 F.3d at 65-66, Plaintiffs' state common law claims for recovery of oil spill related damages fail as a matter of law, demanding dismissal under 12(b)(6).

1.  **Plaintiffs' failure to present their claims through the OPA-mandated claims process deprives the Court of federal subject matter jurisdiction and precludes Plaintiffs from asserting a legally viable cause of action for recovery of damages related to the oil spill.**

Although OPA provides the exclusive remedy for oil spill-related damages, Plaintiffs failed to follow the Congressionally-mandated claims process in OPA.  Accordingly, this Court's subject matter jurisdiction cannot be properly invoked by the Plaintiffs, and the Complaint as to HESI should be dismissed on this independent, jurisdictional basis.

OPA provides a comprehensive statutory framework for parties who suffer damages from oil spills in navigable waters to make claims to a designated responsible party for recovery costs and damages.  *See* 33 U.S.C. §§ 2701, *et seq.*  Parties claiming to have suffered damages from spills are required to present their claims to the responsible party before filing a lawsuit claiming damages:

> **[A]ll claims** for removal costs or damages **shall** be presented first to the responsible party or guarantor of the source designated under section 2714(a) of this title.

33 U.S.C. § 2713(a) (emphasis added).  Claimants may only initiate suit *after a claim is presented in accordance with § 2713(a)* and the responsible party denies all liability for the claim or the claim is not settled by payment within ninety days after the date upon which the claim was presented.  33 U.S.C. § 2713(c).  Presuit presentment is mandatory:

> The clear text of § 2713 creates a ***mandatory condition precedent*** barring all OPA claims unless and until a claimant has presented her claims in compliance with § 2713(a) and either:  (1) all responsible parties deny all liability; or (2) the claim is not settled by payment within 90 days after (A) the claim was presented, or (B) advertising was begun under section 2714(b) of the Act, whichever is later. 33 U.S.C. § 2713(c).

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 240 (11th Cir. 1995) (emphasis added); *see also Gabarick*, 623 F. Supp. 2d at 750-51 (dismissing for lack of subject matter jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure to present such claims to the designated responsible party); *LeBoeuf v. Texaco*, 9 F. Supp. 2d 661, 666 (E.D. La. 1998) (holding that section 2713 creates "mandatory conditions precedent to filing an action in either state or federal court"); *Marathon Pipe Line Co. v. LaRoche Indus. Inc*., 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant.").  OPA's plain language precludes the right to proceed in court without first exhausting the administrative process.  *See Boca Ciega Hotel, Inc.,* 51 F.3d at 238 (noting that OPA's use of the absolute words "all" and "shall" indicate its mandatory and exclusive nature with respect to its covered damages); *Johnson*, 830 F. Supp. at 310-11 (dismissing oil damage and removal claims upon finding that "[i]n this case, plaintiffs have not complied with the presentation **requirement** of OPA") (emphasis added); *see also* S. Rep. No. 101-94 (1989),

reprinted in 1990 U.S.C.C.A.N. 722, 732 (hereinafter "Senate Report") (noting that "the bill **requires** claims to be presented in the first instance to the discharger, where known") (emphasis added).

In this case, Plaintiffs do not allege that they have made a presuit claim to the responsible party in accordance with OPA. As a result, this Court lacks jurisdiction to hear any of Plaintiffs' claims related to the oil spill, and such claims should be dismissed.

> **2.    Plaintiffs' sole remedy for their alleged damages from the oil spill, if any, lies against the "responsible party" designated under OPA, not against HESI.**

Plaintiffs' failure to present their claims under OPA warrants a dismissal of the case as a whole. Even if Plaintiffs were subsequently to satisfy the OPA claims presentment process, their sole remedy, if any, lies against the designated responsible party or parties, not against HESI. Under OPA, the responsible party for the vessel or facility from which an oil spill emanates is liable for all associated damages and removal costs:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, **each responsible party** for a vessel or facility from which oil is discharged … **is liable for the removal costs and damages** specified in subsection (b) that result from such incident.

33 U.S.C. § 2702(a) (emphasis added). In the case of an oil spill originating from an offshore vessel or facility, OPA defines the "responsible party" as "the lessee or permittee of the area in which the facility is located." 33 U.S.C. § 2701(32)(C). The Coast Guard designates the responsible party who is strictly liable for recovery costs and economic damages. 33 C.F.R. § 136.305. *See also Gabarick*, 623 F. Supp. 2d at 744. ("When an oil spill occurs on U.S. navigable waters, the Coast Guard determines the source of the discharge and notifies a responsible party for that source. A responsible party for a vessel from which oil is discharged is strictly liable for removal costs and damages."); Senate Report, at 723 (noting that "wherever

possible, the burden is to be on the discharger to first bear the costs of removal and provide compensation for any damages.").

Recourse against the designated responsible party is the sole remedy for those injured by an oil spill.  "OPA only imposes liability against responsible parties."  *National Shipping*, 924 F. Supp. at 1446.  Any recovery as against third-parties is limited to an action for contribution *by the responsible party*, not direct claims by those alleging injury resulting from an oil spill.  *See* 33 U.S.C. § 2709.  As the court in *Gabarick* explained:

> [i]n light of Congress's intent to minimize piecemeal lawsuits and the mandatory language of OPA discussed earlier, it appears that Claimants should pursue claims covered under OPA **only against the responsible party and in accordance with the procedures established by OPA.  Then, the responsible party can take action to recover against third parties.**

623 F. Supp. 2d at 750 (emphasis added).  Plaintiffs, therefore, can only state viable claims against the responsible party and only in compliance with OPA's mandatory prerequisites.

Here, Plaintiffs cannot assert any viable claims against HESI because it is not a designated responsible party.  As in *Gabarick*, Plaintiffs must pursue their claims under OPA, and they may only do so against a designated responsible party.  HESI is not, as a matter of law, liable to Plaintiffs for their alleged damages resulting from the oil spill.  Accordingly, the Court should dismiss all such claims with prejudice under Rule 12(b)(6).

**D.    Plaintiffs' Claims Against HESI Fail to Contain Sufficient Factual Material, Accepted as True, to State a Claim for Relief that Is Plausible on Its Face.**

Independent of the OPA displacement and jurisdictional requirements, the Complaint also fails to state a claim to relief that is plausible on its face due to inherent and fatal pleading deficiencies.  Plaintiffs do not aver sufficient specific facts to support their claims against HESI.  Plaintiffs begin their allegations with the statement that HESI is a Delaware corporation doing business in Alabama, is "one of the world's largest providers of products and services to the

energy industry," and sets forth that "[a]board the Horizon, Halliburton was engaged in the cementing operations of the well and well cap."  (Complaint ¶ 24).

Upon this, Plaintiffs aver facts regarding cementing operations generally.  (Complaint ¶¶ 33-34, 38, 43).  Plaintiffs allegations are juxtaposed with detailed, but speculative, theories and conclusions about how the cementing operation may have gone wrong.  However, beyond speculative theories, Plaintiffs fail to allege any facts demonstrating that HESI was negligent or otherwise acted in a wrongfully manner.  Therefore, the Complaint does not state a plausible claim against HESI.

It is not enough for Plaintiffs to simply aver that HESI was "negligent" or that it acted in an otherwise improper manner without alleging sufficient facts to support the plausibility of these legal conclusions.  A Rule 12(b)(6) motion tests the sufficiency of the pleadings.  Although the court accepts well-pleaded facts as true, the Supreme Court has rejected the formerly-applicable principle that a dismissal for failure to state a claim was improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim."  *Twombly*, 550 U.S. at 561-62.  Rather, to survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  This standard "does not require 'detailed factual allegations,' **but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation**."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570) (emphasis added).

The courts' application of *Twombly* and *Iqbal* proceeds in two steps.  First, the court determines which allegations in the complaint are not entitled to the assumption of truth.  *Id.* at 1950.  Courts reject attempts by plaintiffs to simply recite the elements of a cause of action or to

"dress up" legal conclusions as factual allegations in determining whether a complaint contains sufficient factual information to "state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 555-56 ("[A] formulaic recitation of the elements of a cause of action will not do."); *American Dental Assoc. v. Cigna Corp.*, No. 09-12033, 2010 U.S. App. LEXIS 9928, at *11-12 (11th Cir. May 14, 2010) (quoting *Twombly*, 550 U.S. at 555).

Second, the court considers the remaining factual allegations that are entitled to the assumption of truth to determine whether they plausibly suggest an entitlement to relief. *Iqbal*, 129 S. Ct. at 1951.

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of "entitlement to relief."

*Id.* at 1949 (citing *Twombly*, 550 U.S. at 557). A claim only has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*; *see also American Dental Assoc.*, No. 09-12033, 2010 U.S. App. LEXIS 9928, at *14. In such cases, the complaint should be dismissed pursuant to Rule 12(b)(6).

Applying this pleading standard to Plaintiffs' claims against HESI requires dismissal of all such claims. First, Plaintiffs state a list of alleged facts but fail to make the critical assertions of each of their claims, relying instead on dressed-up legal conclusions and simple recitations of the elements of the causes of action that are not entitled to the assumption of truth. Negligence under maritime law is the failure to use reasonable care under the circumstances. *National Shipping Co. of Saudi Arabia*, 924 F. Supp. at 1450 (*citing* 8 Benedict on Admiralty § 3.02[B][4]

(7th ed. 1995)). The elements of a maritime claim of negligence are identical to those of its land-based counterpart, *i.e.*, a duty owed and breach of that duty, which proximately causes the plaintiff to suffer damages. *Kentucky Timber Exports v. Massan Shipping Indus.*, No. 93-0110-AH-C, 1996 U.S. Dist. LEXIS 455, at *24 (S.D. Ala. Jan. 11, 1996) (citing *Uncle Ben's Int'l Div. v. Hapag-Lloyd*, 855 F.2d 215, 216-17 (5th Cir. 1988)); *Consolidated Aluminum Corp. v. C. F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987), *cert. denied*, 486 U.S. 1055, 100 L. Ed. 2d 922, 108 S. Ct. 2821 (1988). The resultant harm must be reasonably foreseeable. *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991). Plaintiffs set forth their allegations without any regard to the substance of their claims of negligence. Though Plaintiffs state the process for cementing a well, they fail to state where HESI's actions were improper. The fact that cementing work had recently been done, or that there was a "new type of cement" does not lead to any conclusion that HESI did anything wrongfully. Though Plaintiffs set forth cementing "facts" within a list of speculative claims of what could have gone wrong on the Deepwater Horizon, they do not set forth any actual allegations of breach of duty, cause in fact, or proximate cause by HESI. The same holds true for Plaintiff's allegations of wantonness and negligence *per se*.[7]

Plaintiffs' Complaint suffers the same failure to identify any role of HESI in the claim for trespass. Under Alabama law, the situation could only be described as an "indirect trespass." The Alabama Supreme Court has held that "an indirect trespass occurs where the trespasser releases a 'foreign polluting matter' beyond the boundaries of his property, knowing to a 'substantial certainty' that it will invade the property." *Russell Corp.*, 790 So. 2d at 946-47

---

[7] To establish negligence per se, a plaintiff must prove: (1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's injury. *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 726 (Ala. 2009); *Dickinson v. Land Developers Constr. Co.*, 882 So. 2d 291, 302 (Ala. 2003). In addition to not linking HESI to any of these elements, Plaintiffs fail to identify any statute that has been violated.

(citing *Rushing v. Hooper-McDonald, Inc.*, 300 So. 2d 94 (Ala. 1974)).  Though a direct trespass does not require a showing of actual damages, a plaintiff asserting an indirect trespass must show such actual damages.  *Russell Corp.*, 790 So. 2d at 947.  To establish an indirect trespass, the plaintiff must prove four elements:  1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damage to the res.  *Id.* (citing *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 529-30 (Ala. 1979)).  In order to prove an indirect trespass, the Plaintiffs here must show that "some substance has entered upon the land itself, affecting its nature and character, and causing substantial actual damage to the res." *Id.*  Plaintiffs' alleged facts fail to satisfy any of the elements of indirect trespass under Alabama law.  They allege no facts, taken as true, showing any invasion onto their exclusive property—the condominiums mentioned in paragraph 5 of the Complaint—or set forth any intentional act by HESI that foreseeably would affect their land or property.  Indeed, no cementing act is mentioned with the trespass claim for relief.  There is no plausible allegation of trespass in the Complaint that can satisfy the standard under Federal Rule of Civil Procedure 8, as interpreted by *Twombly* and *Iqbal*.

Likewise, Plaintiffs nuisance claim must fail.  Nuisance under Alabama law is either a "public" or a "private" nuisance.  *Russell Corp.*, 790 So. 2d at 951.  "A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effect on individuals.  A private nuisance is one limited in its injurious effects to one or a few individuals."  *Id.*  If the nuisance is a public nuisance, Plaintiffs must show a "'special damage' that is different in 'kind and degree from [the damage] suffered by the public in general."  *Id.*  The Complaint sets forth no such special damage.  Furthermore, the Complaint cannot support a

claim for private nuisance because, in addition to not fitting the definition as a nuisance "limited in its injurious effects to one or a few individuals," the Plaintiffs own no part of the Gulf of Mexico.  *Id.* at 951-52.  As with their other claims, Plaintiffs make no attempt to tie any factual allegations regarding HESI to its nuisance claim.  Thus, under *Twombly*, *Iqbal* and their progeny, the Court should dismiss Plaintiffs' claims against HESI in their entirety under Rule 12(b)(6).

**E.    Alternatively, Plaintiffs Should Be Required to File a More Definitive Statement Detailing the Facts, if Any, Supporting Their Claims Against HESI.**

To the extent Plaintiffs' claims survive preemption under OPA (and they should not), Plaintiffs alternatively should be required to file a more definitive statement of their pleading pursuant to Rule 12(e) given the vague and ambiguous allegations against HESI.  The Complaint fails to aver any factual statements demonstrating Plaintiffs' plausible entitlement to relief, including but not limited to any facts showing that HESI violated any duty to Plaintiffs or that any wrongdoing by HESI proximately caused the damages of which Plaintiffs complain.  To the extent the Complaint may be construed as alleging damage to real property, Plaintiffs fail to identify a single piece of real or personal property that they own that has been physically damaged.  As well, as described above in the section analyzing the Complaint under *Twombly* and *Iqbal*, the allegations in the Complaint fail to clearly allege actual acts by HESI necessary in order to maintain any of the claims against HESI.  Therefore, at a minimum, and in order to permit HESI to reasonably prepare a response to Plaintiffs' claims, Plaintiffs should be required to file a more definitive statement of their pleading pursuant to Rule 12(e).

**F.    In the Alternative, to the Extent Plaintiffs Seek Damages for Their Alleged Inability to Rent or Sell Their Property Based Upon the Anticipated Landfall of Oil or the Perception of Potential Renters and/or Buyers, the Economic Loss Rule Bars Such Claims Against HESI as Plaintiffs Cannot Show Damage to a Proprietary Interest.**

Assuming *arguendo* that Plaintiffs' claims against HESI are not otherwise barred by OPA (*see supra*), such claims would nonetheless fail under the economic loss rule because Plaintiffs

do not sufficiently allege any physical injury to a propriety interest, thereby precluding their recovery for economic losses. Despite their implication that the use of the Gulf of Mexico is central to the value of their property and their ability to earn rental income, Plaintiffs have not pled that they possess a proprietary interest that has been physically damaged. Plaintiffs' failure to sufficiently plead physical injury to a proprietary interest, or lack of any such proprietary interest, is dispositive, barring them from recovery for economic losses against HESI.

A plaintiff cannot recover under general maritime law for economic loss absent physical damage to a proprietary interest. *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927). "It is unmistakable that the law . . . does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit." *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006). *See also Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1072 (5th Cir. 2001) ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort."); *State of Louisiana v. M/V Testbank*, 752 F.2d 1019, 1022 (5th Cir. 1985);[8] *Kingston Shipping Co. v. Roberts,* 667 F.2d 34 (11th Cir. 1983). The rule's purpose is to prevent limitless liability for negligence and the filing of lawsuits of a highly speculative nature. *Akron Corp. v. M/T Cantigny*, 706 F.2d 151, 153 (5th Cir. 1983).

Here, Plaintiffs seek recovery exclusively for economic losses. Specifically, they seek recovery damages to the value of property and for loss of rentals. (Complaint ¶¶ 72, 73, 94, 99, 105, 116). Such alleged damages relate exclusively to their purported inability to continue renting properties they own on the Gulf of Mexico or, presumably, to sell those properties.

---

[8] Although *Testbank* recognizes a narrow exception to this application of the economic loss rule, it is not applicable here because Plaintiffs do not allege any facts establishing a course of business conduct in which they make commercial use of a public right to fish in any specifically defined areas allegedly damaged by the oil spill. Instead, Plaintiffs merely allege that the oil spill in the Gulf of Mexico has caused damage to their property values and/or ability to earn rental income on such properties. (*See* Complaint ¶¶ 72, 73) That is insufficient.

Although they might be able to recover for those injuries from the responsible party under OPA, they cannot do so here against HESI under general common law theories because OPA preempts or displaces such claims and, independently, because the economic loss rule precludes their recovery under general maritime law.   Accordingly, Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6).

**G.      Plaintiffs Cannot, As a Matter of Law, Recover Punitive Damages from HESI.**

In addition to economic damages claims for lost revenue, Plaintiffs also demand recovery of punitive damages.  (Complaint ¶¶ 95, 117, 122, 130).  As a matter of law, however, they cannot recover punitive damages.   OPA, which provides Plaintiffs' exclusive remedy for damages resulting from the oil spill, does not permit the recovery of punitive damages.  *South Port Maine*, 234 F.3d at 66.   The statute's comprehensive list of recoverable damages is exclusive as "Congress intended the OPA to be the sole federal law applicable in this area of maritime pollution." *Id.* at 65.   Thus, as a matter of law, Plaintiffs cannot recover punitive damages even if their claims are construed as maritime tort claims.  *See Clausen v. M/V New Carissa*, 171 F. Supp. 2d 1127, 1133 (D. Or. 2001) (holding that OPA precludes recovery of punitive damages under any general maritime law theory for which OPA could provide relief).  Likewise, based upon the prohibition on punitive damages, the claim for wantonness must be dismissed.  *Hollinger v. Kirby Tankships, Inc.*, 910 F. Supp. 571, 572 (S.D. Ala. 1996); *Frantz v. Brunswick Corp.*, 866 F. Supp. 527, 532 (S.D. Ala. 1994).  Plaintiffs' demand for the recovery of punitive damages, therefore, fails as a matter of law.

### CONCLUSION

For the reasons set forth above, subject matter jurisdiction has yet to attach for Plaintiffs'

claims and, separately, they have failed to plead viable claims against HESI as a matter of law.

Pursuant to Rule 12(b)(1) and Rule 12(b)(6), the Court, therefore, should dismiss Plaintiffs'

claims against HESI in their entirety.  Alternatively, Plaintiffs should be required to file a more

definitive statement of their pleading pursuant to Rule 12(e).

Respectfully submitted this 2nd day of August, 2010.

**GODWIN RONQUILLO PC**

DONALD E. GODWIN (GODWD5022) *(pro hac vice)*
Email  dgodwin@godwinronquillo.com
BRUCE W. BOWMAN, JR. *(pro hac vice)*
Email  bbowman@godwinronquillo.com
JENNY L. MARTINEZ *(pro hac vice)*
Email  jmartinez@godwinronquillo.com
FLOYD R. HARTLEY, JR. *(pro hac vice)*
Email  fhartley@godwinronquillo.com
GAVIN E. HILL *(pro hac vice)*
Email  ghill@godwinronquillo.com
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
Telephone: 214.939.4400
Facsimile: 214.760.7332

and

R. ALAN YORK *(pro hac vice)*
Email  ayork@godwinronquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

and

**s/ Joseph P. H. Babington**
JOHN N. LEACH  (LEACJ2634)
Email  jnl@helmsinglaw.com
JOSEPH P. H. BABINGTON  (BABIJ7938)
Email  jpb@helmsinglaw.com
RUSSELL C. BUFFKIN  (BUFFR6510)
Email  rcb@helmsinglaw.com
**HELMSING, LEACH, HERLONG, NEWMAN
& ROUSE, P.C.**
Post Office Box 2767
Mobile AL 36652
Telephone:  251.432.5521
Facsimile:  251.432.0633

**ATTORNEYS FOR DEFENDANT,
HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 2nd day of August, 2010, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system. I also certify that I have mailed this filing by United States Postal Service to all counsel of record who are not registered to receive electronic service by operation of the court's electronic filing system.

M. Stephen Dampier, Esquire
LAW OFFICES OF M. STEPHEN DAMPIER
55 North Section Street
Fairhope, AL 36532
***Counsel for Plaintiffs***

Don Barrett, Esquire
David McMullan, Esquire
Brian Herrington, Esquire
DON BARRETT, PA
Post Office Box 987
Lexington, MS  39095
***Counsel for Plaintiffs***

Richard R. Barrett, Esquire
LAW OFFICES OF RICHARD R. BARRETT
Post Office Box 339
Lexington, MS  39095
***Counsel for Plaintiffs***

Zach Butterworth, Esquire
Gary Yarborough, Jr., Esquire
HESSE & BUTTERWORTH, PLLC
841 Highway 90
Bay St. Louis, MS  39520
***Counsel for Plaintiffs***

Larry D. Moffett, Esquire
DANIEL COKER HORTON & BELL
Post Office Box 1396
Oxford, MS  38655
***Counsel for Plaintiffs***

Edward C. Taylor, Esquire
Brenda G. Long, Esquire
DANIEL COKER HORTON & BELL
Post Office Box 416
Gulfport, MS  39502
***Counsel for Plaintiffs***

Dewitt M. "Sparky" Lovelace, Esquire
Alex Peet, Esquire
LOVELACE LAW FIRM, PA
12870 U.S. Highway 98 West, Suite 200
Miramar Beach, FL  32550
***Counsel for Plaintiffs***

Randall A. Smith, Esquire
Zach Butterworth, Esquire
J. Geoffrey Ormsby, Esquire
Hiawatha Northington, II, Esquire
SMITH & FAER, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, LA  70170
***Counsel for Plaintiffs***

Dawn M. Barrios, Esquire
Bruce S. Kingsdorf, Esquire
Zachary L. Wool, Esquire
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA  70139
***Counsel for Plaintiffs***

Charles Barrett, Esquire
BARRETT & ASSOCIATES, PA
6518 Highway 100, Suite 210
Nashville, TN  37205
***Counsel for Plaintiffs***

Elizabeth A. Alexander, Esquire
LIEFF, CABRASER, HEIMANN & BERNSTEIN
150 Fourth Avenue N, Suite 1650
Nashville, TN  37219
**Counsel for Plaintiffs**

Steven E. Fineman, Esquire
Wendy R. Fleishman, Esquire
Annika K. Martin, Esquire
LIEFF, CABRASER, HEIMANN & BERNSTEIN
250 Hudson Street, 8th Floor
New York, NY  10013
**Counsel for Plaintiffs**

Elizabeth J. Cabraser, Esquire
LIEFF, CABRASER, HEIMANN & BERNSTEIN
275 Battery Street, 29th Floor
San Francisco, CA  94111
**Counsel for Plaintiffs**

Blane H. Crutchfield, Esquire
Douglas L. McCoy, Esquire
HAND ARENDALL LLC
Post Office Box 123
Mobile, AL 36601
**Counsel for Transocean Deepwater, Inc.**
**Transocean Deepwater Offshore Drilling, Inc.**

John M. Johnson, Esquire
Adam K. Peck, Esquire
William H. Brooks, Esquire
Marchello D. Gray, Esquire
LIGHTFOOT, FRANKLIN & WHITE, LLC
400 North 20th Street
Birmingham, AL 35203
**Counsel for BP America, Inc.,**
**BP Products North America, Inc.,**
**BP Company North America, Inc. and**
**BP Corporation North America, Inc.**

Sid J. Trant, Esquire
Joel M. Kuehnert, Esquire
R. Thomas Warburton, Esquire
BRADLEY ARANT BOULT CUMMINGS
One Federal Place
1819 Fifth Avenue North
Birmingham, AL  35203-2104
**Counsel for Anadarko Petroleum Corp. and**
**and  Moex Offshore 2007, LLC**

Richard C. Godfrey, Esquire
John T. Hickey, Jr., Esquire
James Andrew Langan, Esquire
KIRKLAND & ELLIS, LLP
300 N. LaSalle
Chicago, IL 60654
**Counsel for BP America, Inc.,**
**BP Products North America, Inc.,**
**BP Company North America, Inc. and**
**BP Corporation North America, Inc.**

James J. Dragna, Esquire
BINGHAM MCCUTCHEN
355 South Grand Avenue, Suite 4400
Los Angeles, CA 90071-3106
**Counsel for Anadarko Petroleum Corp. and**
**and  Moex Offshore 2007, LLC**

A. Danner Frazer, Jr., Esquire
Ross A. Frazer, Esquire
Robert J. Mullican, Esquire
FRAZER GREENE UPCHURCH & BAKER
Post Office Box 1686
Mobile, AL  36633
**Counsel for Cameron International Corp.**

Ky E. Kirby, Esquire
Michael B. Wigmore, Esquire
Warren Anthony Fitch, Esquire
BINGHAM MCCUTCHEN
2020 K Street, NW
Washington, DC 20006-1806
**Counsel for Anadarko Petroleum Corp. and**
**and  Moex Offshore 2007, LLC**

David J. Beck, Esquire
BECK, REDDEN & SECRET, LLP
One Houston Center
1221 McKinney Street, Suite 4500
Houston, TX 77010
***Counsel for Cameron International Corp.***

Thomas M. Galloway, Jr., Esquire
GALLOWAY, WETTERMARK, EVEREST,
RUTENS & GAILLARD, LLP
3263 Cottage Hill Road
Mobile, AL 36606
***Counsel for M-I, LLC***

**s/ Joseph P. H. Babington**
Of counsel